**In Re Edward S. SMITH, Petitioner.**

**No. 81–1133.**

United States Court of Appeals,
Fifth Circuit.

Unit A

Sept. 21, 1981.

Kerry P. Fitzgerald, Dallas, Tex., for petitioner.

Anne M. Srebro, Asst. U. S. Atty., Dallas, Tex., for defendant.

Before BROWN and GARZA, Circuit Judges, and PETER H. BEER *, District Judge.

GARZA, Circuit Judge:

This case involves the struggle between society's interests in bringing those guilty of violating the law to justice and an individual's interest in preserving his personal reputation. Although our Constitution provides for both interests to exist, oftentimes the judiciary is called upon to balance those interests when a conflict arises between them. Today, after balancing the interests, we find the scales of constitutional liberty tip in favor of the individual.

### FACTUAL RESUME

This case arises out of an investigation by the United States Attorney's Office in Dallas of bribery allegations concerning the Army and Air Force Exchange Service (AAFES) at its world headquarters in Dallas. The AAFES purchases billions of dollars of merchandise each year for resale to military personnel throughout the military P.X. system.

For approximately two years, the Assistant United States Attorney had conducted the investigation resulting in twenty-six convictions of bribery and related offenses

* District Judge of the Eastern District of Louisiana, sitting by designation.

involving AAFES employees, government contractors, and military sales representatives.

On August 1, 1980, after extensive plea bargaining, Churchill Sales Co., Inc., through its president, waived indictment and entered a guilty plea to a felony information[1] charging one substantive count of bribery of an AAFES purchasing agent in violation of 18 U.S.C. § 201(b)(1) and § 201(b)(3). This plea was taken before Judge Barefoot Sanders of the Dallas Division in the Northern District of Texas.[2]

During the plea hearing, in addition to the procedures required by Rule 11 of the Federal Rules of Criminal Procedure, the Assistant United States Attorney read in open court and filed in the criminal case a factual resume prepared by her for purposes of the plea hearing.[3] The factual resume consisted of one page very briefly and generally summarizing the facts concerning the plea of guilty. The resume stated that Churchill Sales Co. had directly paid a named purchasing agent of AAFES amounts in excess of $15,000.00 for the purpose of influencing procurement orders issued by that purchasing agent on behalf of AAFES. However, in addition to describing the events immediately involved in Churchill's plea of guilty, the resume went on to state that Churchill had paid sums to other unnamed AAFES employees, but also specifically named the head of AAFES among those other employees. During the Rule 11 dialogue between the Court and defendant, no mention was made of other names or of any monies paid to anyone other than those to the AAFES purchasing agent, as alleged in the felony information. The head of AAFES, Mr. Smith, is the petitioner in this case.

A little more than one month later, on September 4, 1980, Martin A. Taylor Co., Inc., through its legal representative, similarly waived indictment and entered a guilty plea to a felony information[4] charging bribery of another AAFES purchasing agent. This plea was taken before Judge Sarah T. Hughes.[5] As in the earlier plea procedure, the Assistant United States Attorney prepared, read aloud in open court, and filed a factual resume similar to the earlier resume filed which again specifically singled out and named the petitioner as having been paid monies in addition to the purchasing agent named in the felony information. However, this resume also stated that "the last payment to Mr. Smith was in January of 1980." As in the prior Rule 11 dialogue between the Court and the defendant's representative, no mention was made of Petitioner nor was any other AAFES employee accused of taking a bribe except the purchasing agent named in the felony information.

As fate would have it, the attorney for Petitioner, both in the proceedings below and now on appeal before us, happened to be present in Judge Hughes' courtroom after having been appointed by Judge Hughes to represent a criminal defendant in a completely unrelated criminal case. While waiting for his business before the Court, counsel for Petitioner heard Mr. Smith's name mentioned as the Assistant United States Attorney read aloud the resume in the Martin Taylor, Co. case. Taken by surprise and unprepared to represent the interests of the Petitioner (an unrelated party to the criminal case), counsel sat silently in the courtroom and began to ponder what remedy might be available to redress the rights of Petitioner.

1. The felony informations involved were prepared by the same Assistant United States Attorney.

2. The case referred to is styled *United States of America v. Churchill Sales Co., Inc.*, Criminal No. CR 3–80–165.

3. The Assistant United States Attorney asserts that Judge Sanders requires the preparation

and filing of factual resumes in all criminal cases where there is to be a plea of guilty.

4. Neither of the felony informations involved mentioned Mr. Smith as having been involved in the crimes alleged therein.

5. The case referred to is styled *United States of America v. Martin Taylor Co., Inc.*, Criminal No. CR 3–80–198.

After each of these plea hearings, the news media carried many accounts concerning the AAFES bribery scandal, and, as was to be expected when any person in a position of responsibility and power[6] is implicated in such a scandal, the news media reported that, as a matter of public and official courtroom record, Mr. Smith had been paid bribe monies by various businesses dealing with AAFES.

## PROCEEDINGS BELOW

After several months of adverse publicity for Petitioner, on December 16, 1980, Petitioner's attorney filed a motion in both the abovementioned criminal cases asking the District Courts to either strike any mention of Petitioner's name from the factual resumes and record or to seal the record in those proceedings. Although neither motion was filed under seal or requested an in-chambers hearing, both motions requested that the motions themselves be sealed if the requested relief was granted. These motions were also reported in the news media.

Petitioner's motions set forth the facts and urged that the specific mentioning of Mr. Smith's name in connection with the bribery allegations was irrelevant to the Rule 11 inquiry and particularly unnecessary since Mr. Smith had not been mentioned in either of the felony informations upon which the plea hearings were based. The motions also alleged that Mr. Smith had been singled out solely for publicity purposes and that such actions were unethical.[7] The motions also noted that Mr. Smith had voluntarily testified before and cooperated with the Federal Grand Jury investigation and that he had not been indicted. The motions further alleged that the factual resumes had injured Mr. Smith's name and reputation in violation of his constitutional rights and because the Assistant United States Attorney could not be held legally accountable for her conduct and because no other remedy existed for redressing these accusations, the motions prayed that the District Courts exercise their equitable powers and grant the requested relief despite the fact that no formal rules provided for such a procedure in a criminal case.[8]

On the 7th and 12th of January, 1981, hearings upon the motion in Criminal Case No. CR 3–80–198 were held before Judge Hughes. At these hearings the Court took judicial notice of the factual resume mentioning Mr. Smith by name. Evidence was also introduced concerning the widespread news coverage linking Mr. Smith with the AAFES scandal through the earlier plea

---

6. Petitioner Smith, at the time of these occurrences was the highest ranking civilian at AAFES and assistant to the Commander of AAFES.

7. The Disciplinary Rules of the State Bar of Texas provide:
"DR7–106 (Trial Conduct)
* * * (C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
(1) *State or allude to any matter that he has no reasonable basis to believe is relevant to the case* or that will not be supported by admissible evidence.
(2) *Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.*
DR7–107 (Trial Publicity)
(B) *A lawyer* or law firm *associated with the prosecution* or defense *of a criminal matter shall not, from the time of the filing* of a complaint, *information,* or indictment, the issuance of an arrest warrant, or arrest *until the commencement of the trial* or disposition without trial, *make or participate in making*

an extra-judicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:
* * * (5) *The identity, testimony, or credibility of a prospective witness.*
(6) *Any opinion as to* the guilt or innocence of the accused, *the evidence,* or the merits of the case." (emphasis added).

8. Rule 7(d) of the Federal Rules of Criminal Procedure provides for striking of surplusage from an information upon a defendant's motion, but provides no procedure for intervention of a private party. Rule 12(f) of the Federal Rules of Civil Procedure provides a procedure in civil cases whereby immaterial, impertinent or scandalous matter may be striken from the pleadings. The procedure provided by Rule 12(f) however, may also be utilized by third parties unrelated to the civil suit. Petitioner's motion to strike and seal is an innovative hybrid of the two procedures of which we approve.

hearings and factual resumes. After the initial facts were brought to the Court's attention, Judge Hughes asked counsel for Petitioner why he had allowed several months to elapse prior to filing the motion. Counsel quite candidly admitted that he neither knew of or could find any standard procedure to address and remedy the situation involving his client.[9] During argument of the motion, the government suggested the damage to Mr. Smith's reputation had already been done and that any relief of which the Court could grant would be a "fruitless gesture." Without elaboration, the Court apparently agreed with the government's argument and denied the motion from the bench. On the next day, January 13, 1981, Judge Sanders entered a similar order denying relief in Criminal Case. No. CR 3–80–165.

Three days after Judge Sanders' ruling, Petitioner Smith notified the Personnel Division of AAFES of his intention to retire at the end of the business day on April 12, 1981—the last day of 30 years of service for Smith. Upon retirement Smith was to receive his normal retirement pay commensurate with his employment grade plus an additional retirement annuity because of his participation in the Executive Management Program (EMP).[10] Approval for his retirement was soon acknowledged.

On March 12, 1981, Smith's attorney filed a petition in this Court seeking a Writ of Mandamus to compel the District Courts to strike and/or seal all references made to Smith in the criminal cases. On April 1, an administrative panel of this Court ordered the Clerk of the District Courts to temporarily seal the records in both cases pending oral argument and resolution of this case. However, on the same day, the Commander

of AAFES issued notice to the Petitioner that he was being suspended from the EMP. The only reasons given for the suspension were that Petitioner had been accused of wrongdoing in the two factual resumes previously discussed. After several months of AAFES administrative actions, amended and additional motions, and several orders entered by the administrative panel of this Court, the status of Petitioner remains essentially as it was on April 1—he has been retired with his regular retirement but his EMP benefits are being held in abeyance pending further AAFES proceedings.

## DUE PROCESS

Petitioner Smith contends that the accusation of a criminal offense, by inclusion of his name in the factual resume, has so damaged his name, reputation, and economic interests that the government's actions have violated his liberty and property interests contrary to the due process protection afforded by the Fifth Amendment of the United States Constitution. Petitioner's counsel conceeds that no relief will be able to undo past harm but it may prevent future harm, such as, preventing AAFES from using the factual resumes as a basis for adverse action against Mr. Smith.

We believe this case, concerning factual resumes, to be one of first impression in this Circuit, however we are fortunate to have the guidance of an earlier panel of this Court involving a similar situation. *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), involved a federal grand jury indictment which named ten persons of which only seven were made defendants. The other three, although accused of participa-

---

9. When asked by Judge Hughes why the motion had not been filed shortly after the Martin Taylor Co. plea hearing, counsel for Petitioner replied:

"Because I'm not a party to the case and I had no earthly idea how to get involved in that case. I still don't know if I'm doing it correctly. There's no provision, Judge, for my filing what I've filed, to be perfectly honest about it"... "Necessity sometimes creates imagination."

10. The Executive Management Program was maintained by AAFES for high-level employees and provided many benefits regarding seniority, insurance, and retirement annuities. However, participation in the EMP benefits may be forfeited for a variety of reasons including a violation of the law, regulations or procedures. *See generally, Sheehan v. AAFES*, 619 F.2d 1132 (5th Cir. 1980).

tion in a criminal conspiracy, were denominated in the indictment as "unindicted coconspirators." Two of the three "unindicted coconspirators" petitioned the federal District Court to expunge the references to them in the indictment. The District Court denied their petition. This Court reversed and ordered expunction of all reference to the petitioners' names.

In addressing the standing and justiciability issues raised by the government in *Briggs*, this Court found that the liberty and property concepts of the Fifth Amendment protect an individual from being publicly and officially accused of having committed a serious crime, particularly where the accusations gain wide notoriety. The government's contentions, that an individual's constitutional interests are not affected so long as he is not made a defendant and that any defamatory injury suffered must be attributed to the news media, were rejected as frivolous by this Court. 514 F.2d at 799.

In addressing the merits in *Briggs*, this Court thoroughly analyzed the historic function and scope of authority of the grand jury system and, although pretermitting the issue of whether or not a grand jury may ever make a non-indicting report of any kind, made absolutely clear that the grand jury had exceeded its powers and that no legitimate function was served by naming and accusing an individual of a crime without indicting that individual as a defendant. 514 F.2d 801–803. However, this Court, in balancing governmental interests against the rights of the individual, also addressed the Department of Justice's argument that the grand jury's actions were somehow necessary or relevant to prove the conspiracy alleged. The argument was rejected as insubstantial and this Court found no legitimate governmental interests could be served by stigmatizing private citizens as criminals while not naming them as defendants. 514 F.2d 805 and 802, n. 13. In conclusion, this Court found, after balancing the legitimate governmental interests against the rights of the individuals involved, that the grand jury's actions had violated their due process rights. 514 F.2d

806. As a final matter, this Court expressly held that either direct appeal or petition for writ of mandamus would be equally appropriate methods for invoking its jurisdiction to challenge the District Court's refusal to expunge the references to the petitioners. 514 F.2d 808.

The government in this case urges us to accept the procedures followed regarding the factual resumes to be consistent with *Briggs*. The government argues that *Briggs* only forbids the naming of unindicted coconspirators by a federal grand jury. We cannot agree. The point made in the *Briggs* decision is that no legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights. We can think of no reason to distinguish between an official defamation originating from a federal grand jury or an Assistant United States Attorney. The *Briggs* decision would be rendered meaningless if it could be so easily circumvented by the actions of an Assistant United States Attorney.

The glaring fact present in this case is that the Petitioner had appeared before the federal grand jury and no indictment was sought or returned against him; nor was a criminal information filed against him. It is equally clear that Petitioner's name was not implicated during either of the District Court's procedural obligations under Rule 11 to determine the factual basis for the defendant's pleas of guilty. Neither Judge Sanders nor Judge Hughes found it necessary, material, or relevant to inquire of facts beyond the fact that the defendants had paid monies to the purchasing agents as alleged in the informations. Indeed, neither of the defendant companies' representatives even testified as to having given money, much less bribes, to the Petitioner. Despite all of this, the Assistant United States Attorney in preparing the factual resumes required by the Court decided to include in such resumes a statement accusing the Petitioner of criminal conduct. Why? What possible legitimate purpose could have been served by these official

condemnations? Certainly the purposes of Rule 11 were not advanced by the attack on the Petitioner's good name. Regardless of what criminal charges may have been contemplated by the Assistant United States Attorney against the Petitioner for the future, we completely fail to perceive how the interests of criminal justice were advanced at the time of the plea hearings by such an attack on the Petitioner's character. The presumption of innocence, to which every criminal defendant is entitled, was forgotten by the Assistant United States Attorney in drafting and reading aloud in open court the factual resumes which implicated the Petitioner in criminal conduct without affording him a forum for vindication.

· Accordingly, we find the inclusion of Mr. Smith's name in the factual resumes were a violation of his liberty and property rights guaranteed by the Constitution and hold that Petitioner's motions to strike and seal should have been granted in the proceedings below.

### REMEDY

Therefore, it is ordered that the District Clerk for the Northern District of Texas shall completely and permanently obliterate and strike from the records of the pleas of guilty (including but not limited to the factual resumes) in Criminal No. CR 3–80–165, styled *United States of America v. Churchill Sales Co., Inc.*, and Criminal No. CR 3–80–198, styled *United States of America v. Martin A. Taylor Co., Inc.* any and all identifying reference to or name of Mr. Smith, the Petitioner, so that such references may not be used as a public record to impugn the reputation of Petitioner. It is ordered that all pleadings, records, documents, orders and other papers concerning the Petitioner's Motion to Strike and Seal, in the above-mentioned criminal cases, be sealed and shall be kept sealed until further order of this Court. It is ordered that all pleadings, records, documents, orders or other papers concerning this Petition for Writ of Mandamus be sealed and shall be kept sealed until further order of this Court.

Furthermore, it is ordered that the Clerk for the United States Court of Appeals for the Fifth Circuit, after assurance of completion of the abovementioned orders, shall seal the file in this case received from the Court below.

Our action in this case is to undo the harm done to the Petitioner Smith by his being named in the factual resumes prepared by the Assistant United States Attorney for the Court. Our opinion will in no way interfere with any legitimate investigation of Mr. Smith by the Army and Air Force Exchange Service or their resolution of his entitlement to any of the benefits which he claims. All we are saying is that the Army and Air Force Exchange cannot use the statements made against him in the factual resumes above referred to as the sole basis for the denial of any of his rights without further proof of wrongdoing on his part and giving him an opportunity to rebut any accusations of wrongdoing that might be made against him.

Petition for Writ of Mandamus is GRANTED.