[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13058

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 14, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00575-CV-BE-W-KOB

JUAN AQUAS ROMERO,

Plaintiff-Appellee,

versus

DRUMMOND COMPANY, INC.,
DRUMMOND, LTD,
GARRY N. DRUMMOND,
AUGUSTO JIMENEZ,

Defendants-Appellees,

STEPHEN FLANAGAN JACKSON,

Intervenor-Appellant.

_____

No. 06-13059

_____

D. C. Docket No. 03-00575-CV-BE-W-KOB

IN RE:

DANIEL M. KOVALIK,
TERRENCE P. COLLINGSWORTH,
DEREK J. BAXTER,
ROBERT G. KERRIGAN,

Interested-Parties-
Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

**(March 14, 2007)**

Before CARNES, PRYOR and FARRIS[*], Circuit Judges.

PRYOR, Circuit Judge:

In these consolidated appeals, several lawyers challenge a sanction of criminal contempt entered after the lawyers filed a motion and two declarations in open court, and a journalist seeks access to the filings, which have since been sealed following media reports about their contents. The underlying complaint contains sordid allegations of intrigue, corruption, and assassination in Colombia, "where the awful is ordinary." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1242 (11th Cir. 2006). After the district court by letter asked the U.S. Department of State whether this litigation would adversely affect the conduct of foreign affairs, the

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

plaintiffs twice moved the district court to inform the Department about the contents of a recent declaration of a former Colombian official. The district court then held the plaintiffs' lawyers in criminal contempt and sealed their declarations and their motion to reconsider even though a month earlier the district court had decided that too many filings had been sealed.

There are two issues presented. The first issue is whether a protective order forbidding lawyers from making extrajudicial comments about the expected testimony of a witness clearly prohibited the lawyers from filing in open court declarations of potential witnesses attached to a motion. The second issue is whether the public has a common law right of access to the declarations and the motion to reconsider providing the declarations to the Department of State. Derek Baxter, Terrence Collingsworth, Robert Kerrigan, and Daniel Kovalik, the attorneys for the plaintiffs, appeal the sanction of criminal contempt, and Stephen Jackson, a free-lance journalist who intervened in the litigation, appeals the orders that sealed the motion to reconsider and the declarations and denied Jackson's motion to lift the seal. We vacate the sanction of contempt, because the filings were not clearly prohibited by the protective order, and we reverse, as unsupported by good cause, the orders that sealed the motion and declarations.

## I. BACKGROUND

3

In 2002, a group of named and unnamed plaintiffs, including union leaders and relatives of deceased union members, filed a complaint against the Drummond Company and several of its executives. The complaint alleged that the president of Drummond Ltd., the Columbian subsidiary of Drummond, with the knowledge of executives in the United States, hired Colombian paramilitaries to kill and torture union members at a Drummond coal mine in Colombia. The district court allowed many of the plaintiffs to proceed anonymously based on their alleged concern for their safety in Colombia.

Drummond filed a motion to dismiss the complaint based on, among other arguments, the political question doctrine and international comity. The district court denied the motion and stated that the political question doctrine and issues of comity were fact-intensive and better addressed on a motion for summary judgment. The plaintiffs' lawyers then, through their website, urged the public to contact Drummond. They allegedly represented that the denial of the motion to dismiss established the validity of their complaint.

On the motion of Drummond, the district court entered a protective order. In addition to requiring counsel to remove from their website allegations about the denial of the motion to dismiss, the protective order prohibited "all participants, including potential witnesses . . . from making or authorizing extrajudicial

4

comments . . . to the media and the public concerning . . . the character, credibility, reputation or criminal record of a party or witness, and the expected testimony of a party or witness." The protective order also directed "counsel for the parties [to] avoid commenting in court papers that are not filed under seal on evidence that is irrelevant to legal matters at issue therein." Jackson intervened to challenge the protective order based on the First Amendment. After a sharp exchange between Jackson's counsel and the court, the district court allowed Jackson to intervene, agreed to withdraw the original protective order, and entered a revised protective order.

The revised protective order applied only to counsel of record and prohibited them from "making or authorizing extrajudicial comments, and disseminating or authorizing the dissemination of information to the media and the public concerning . . . the expected testimony of a party or witness [or] [m]atters that counsel know, or reasonably should know, will be inadmissable at trial, and would if disclosed create a substantial risk of prejudicing an impartial trial." The order allowed an attorney to state "without elaboration or any kind of characterization whatsoever . . . [a]n allegation or defense made in this case, [i]nformation properly contained in the public record of this case; [s]cheduling information, or [a]ny decision made or order issued by the court that is a matter of public record." The

5

revised protective order did not define its terms, require that any filings be made under seal, or limit references to evidence in court filings.

Unbeknownst to the plaintiffs and the district court, Drummond had been lobbying the Department of State to intervene in the litigation, but its efforts were hindered because it could not share sealed documents with the Department. Without making any findings about the need to file documents under seal, the district court had allowed the parties to file motions under seal and to designate discovered material as confidential.

On December 19, 2005, Drummond moved to unseal several documents. On April 7, 2006, the district court expressed its agreement with Drummond that too many documents were sealed: "At the outset, virtually everything filed in this case has been filed under seal. The court now questions the wisdom and propriety of such a blanket order." The district court ordered the parties to identify documents that could be unsealed or redacted without jeopardizing the safety or privacy of any party or witness. The district court also "join[ed] in the Plaintiffs' expressed concern about Defendants' unilateral contact with the State Department" and "deem[ed] it advisable that certain documents in this case be provided directly to the State Department for its review and evaluation . . . by the court." The district court instructed the parties not to contact the State Department about the lawsuit

6

and proposed that it would prepare a letter to solicit the advisory opinion of the State Department on whether the litigation might affect foreign relations.

On April 26, 2006, the district court held a hearing to determine the form of the letter and its attachments and reiterated its concern that too many documents were under seal. The district court complained that "as I looked back over this case, probably ninety-eight percent of what has been filed has been filed under seal. . . . I can't tell what's going on by looking at the docket sheet." Commenting on the inquiry to the State Department, the district court explained that it did not intend to "completely preclud[e the parties] from contacting [the government], but [the court] will act as the gatekeeper."

On May 15, 2006, the district court notified the parties that it had sent a letter to the State Department with copies of the pleadings. The district court also formally ordered the parties not to contact either executive officials of the United States or officials of Colombia:

> No party or counsel or representative of any party or counsel shall make any unilateral, ex parte communication with anyone at the Un[i]t[]ed States Department of State, United States Department of Justice, or any representative of the Government of Col[o]mbia regarding any information relevant to or any matter at issue in this case, or the opinion requested of the Department of State.

The district court explained that it intended to arrange a telephone conference call with a representative from the State Department within a month.

7

On May 16, 2006, the plaintiffs filed a "Motion To Submit Pertinent Information To U.S. State & Justice Departments" to which they attached declarations of a former public official incarcerated in Colombia and Daniel Kovalik, a lawyer for the plaintiffs. The former Colombian official stated that he witnessed the head of the Colombian operations of Drummond hand a briefcase of cash to a paramilitary leader in exchange for killing two union leaders. Kovalik's declaration explained that on May 13, 2006, he flew to Colombia and interviewed the former official. On May 17, 2006, Drummond moved, under seal, to seal the motion and declarations. The district court immediately sealed the declarations, but not the motion itself, and denied the plaintiffs' motion.

On May 18, the plaintiffs moved for reconsideration of their motion. The plaintiffs argued that they had submitted the evidence as soon as it was available and that the evidence was relevant to the inquiry. They alleged that the district court had allowed Drummond to supplement the inquiry with additional contact addresses and a request for the criminal records of a plaintiffs' witness. The plaintiffs objected to the decision of the district court to seal the declarations as contrary to previous orders that the parties confer to unseal previously sealed documents and objected that they were not allowed to respond to the motion of Drummond to seal the declarations. The plaintiffs also argued that the sealed

8

motion of Drummond to seal their filings was an <u>ex parte</u> communication with the district court because the plaintiffs never received a copy.

On May 19, Drummond moved, again under seal, to seal the plaintiffs' motion for reconsideration and notified the court about a news article published that day in the <u>Miami Herald</u>. The <u>Miami Herald</u> reported the allegations of the former Colombian official:

> A former Colombian intelligence officer has claimed that he saw the head of the Colombian branch of a U.S. coal company hand over a suitcase full of cash to pay for the assassinations of two labor leaders, according to a document filed in a U.S. court.
>
> The sworn statement by Rafael Garcia was made to U.S. lawyers for U.S. labor-rights groups who filed a civil suit in 2002 alleging the killers were "acting as employees or agents" of the Alabama-based Drummond Company Inc. The trial in Birmingham is scheduled to begin in October.

The district court sealed the motion for reconsideration and supporting documents, denied the motion for reconsideration, and <u>sua sponte</u> ordered the plaintiffs' lawyers to show cause why they should not be held in contempt for violating the revised protective order. The written order of the district court stated, "Not only did counsel gratuitously publicly file an affidavit of a potential witness, the court has before it circumstantial evidence that indicates counsel may have directly or indirectly provided such expected testimony to a reporter for public dissemination."

9

Jackson moved to unseal the declarations, motion to reconsider, and the motions of Drummond to seal. Jackson argued that the seal violated the common law right of access to court records. The district court denied the motion. The district court, citing Chicago Tribune v. Bridgestone/Firestone, 263 F.3d 1304 (11th ir. 2001), determined that the public had no common law right to access the documents because they were not "filed in connection with pretrial motions that require judicial resolution of the merits." The court reasoned that the equities weighed against opening the declarations to the press because the declarations were incredible, appeared to be an attempt to circumvent the revised protective order, and would likely taint the jury pool and prejudice the right of Drummond to a fair trial. The district court also explained that it sealed the motion to reconsider because it "outlined much of the [other] sealed material." The district court did not provide any reasons for its decision not to unseal the motions filed by Drummond. Jackson appealed the orders sealing the declarations and the motion for reconsideration and the order denying his motion to unseal.

The district court held a contempt hearing without referring the matter to the United States Attorney or appointing a prosecutor. The plaintiffs' lawyers argued that the revised protective order was unclear and testified that they honestly thought that the State Department should know that their complaint was supported

10

by evidence. For fear of exposing attorney work product, the plaintiffs' lawyers requested to explain  in camera their involvement with the Miami Herald reporter and how they attained the declaration. The district court granted their request, and, in addition to discussing privileged work product, the plaintiff's lawyers admitted that they spoke with the reporter, testified that they did not tell the Miami Herald about the declaration, and asserted that, to the best of their knowledge, the reporter learned of the declaration independently.

Upon returning to the courtroom, the district court concluded that the plaintiffs' lawyers either had been overzealous in their advocacy or had intentionally plotted to evade the revised protective order. The district court held the plaintiffs' lawyers in contempt and fined them $500. The district court released the Drummond attorneys from the strictures of the revised protective order so that the attorneys could comment on the allegations in the declaration.

The plaintiffs' lawyers appealed and moved to stay the fine during the appeal. The district court granted the request for a stay but wrote at length about its reasons for finding that the plaintiffs' lawyers committed contempt. The court noted that "[f]rom the beginning of this case, counsel have demonstrated either a lack of knowledge of, or a tendency to ignore or flaunt the Rules of Procedure and the Rules of Professional Conduct." The court noted that the bar on "extrajudicial"

11

comments in the revised protective order incorporated the Alabama Rules of Professional Conduct and that the original protective order, with emphasis added, had defined "extrajudicial" as "not forming a <u>valid part</u> of open legal proceedings in this case."

## II. STANDARDS OF REVIEW

Two standards of review apply to this appeal. First, "[i]n reviewing the sufficiency of the evidence in support of a finding of criminal contempt, we must determine whether the evidence, construed in the light most favorable to the government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt." <u>United States v. Maynard</u>, 933 F.2d 918, 920 (11th Cir. 1991) (internal quotation marks and citations omitted); <u>United States v. Turner</u>, 812 F.2d 1552, 1563 (11th Cir. 1987). Second, we review for abuse of discretion the refusal of a district court to unseal court documents. See <u>Chi. Tribune Co. v. Bridgestone/Firestone, Inc.</u>, 263 F.3d 1304, 1309 (11th Cir. 2001).

## III. DISCUSSION

Before we address the merits of the appeals, we briefly address our jurisdiction to review the orders of the district court. First, the plaintiffs' lawyers argue that the district court erred by holding them in contempt of court and imposing a $500 fine. Because the district court assessed a punitive fine against

the plaintiffs' lawyers, the contempt order is criminal in nature. United States v. K S & W Offshore Eng'g, Inc., 932 F.2d 906, 908 (11th Cir. 1991) ("[T]he imposition of a penalty against attorneys for a punitive purpose [i]s a criminal contempt sanction."). Unlike civil contempt, an order of criminal contempt is a final decision that is immediately appealable. Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 379, 105 S. Ct. 1327, 1331 (1985). Second, Jackson has appealed both the orders of the district court that sealed the documents and the order that denied Jackson's motion to unseal the documents. These orders are appealable as collateral to the underlying action because they conclusively determine a disputed question, resolve an important issue, and are effectively unreviewable on appeal from a final judgment. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S. Ct. 1221, 1225 (1949).

Our discussion of the merits of these appeals is in two parts. We first address the challenge of the plaintiffs' lawyers to their conviction for criminal contempt. We then address whether the district court abused its discretion when it sealed and later refused to unseal the declarations, the plaintiffs' motion, and the motions of Drummond to seal.

*A. The Evidence Was Not Sufficient to Support a Conviction for Criminal Contempt.*

13

Contempt of court may be punished as a criminal offense. 18 U.S.C. § 402. The three elements of criminal contempt are (1) a lawful and reasonably specific order that (2) the defendant has violated (3) willfully. United States v. Bernadine, 237 F.3d 1279, 1282 (11th Cir. 2001); see 18 U.S.C. § 401(3). A federal court may punish contemptuous conduct that occurs outside its presence only after giving notice of "the essential facts constituting the charged criminal contempt," "request[ing] that the contempt be prosecuted by an attorney for the government," and affording other procedural protections. Fed. R. Crim. P. 42; see also United States v. Baldwin, 770 F.2d 1550, 1553-57 (11th Cir. 1985) (discussing difference in procedure required for direct and indirect criminal contempt). The defendant "is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge, and not a [civil] suit." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 446, 31 S. Ct. 492, 500 (1911); see also Lamar Fin. Corp. v. Adams, 918 F.2d 564, 567 (5th Cir. 1990) (vacating contempt sanction when defendant not given specific notice that hearing was criminal in nature). "[I]n proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." Gompers, 221 U.S. at 444, 31 S. Ct. at 499.

Even when these procedures are followed, the contempt power is subject to

abuse. As the Supreme Court has observed, those "who make their way to the bench sometimes exhibit vanity, irascibility, narrowness, arrogance, and other weaknesses to which human flesh is heir." Sacher v. United States, 343 U.S. 1, 12, 72 S. Ct. 451, 456-57 (1952). A proceeding regarding criminal contempt demands "deliberateness and caution." Turner, 812 F.2d at 1568. "Most judges, however, recognize and respect courageous, forthright lawyerly conduct. They rarely mistake overzeal or heated words of a [lawyer] fired with a desire to win, for the contemptuous conduct which defies rulings and deserves punishment." Sacher, 343 U.S. at 12, 72 S. Ct. at 457.

The reason that the district court held the plaintiffs' lawyers in contempt is not clear from the record, but Drummond defends the sanction on the grounds that the plaintiffs' lawyers violated the revised protective order both by making extrajudicial comments to the Miami Herald and by filing the declarations. The plaintiffs' lawyers respond that the evidence was insufficient to support a finding that they told anything to the reporter that violated the revised protective order, the revised protective order was not reasonably specific if read to prohibit filing the declarations attached to a motion, and under either theory the evidence was not sufficient to find that they violated the order willfully.

The issue before us is limited to the sufficiency of the evidence. The

15

plaintiffs' lawyers do not present an argument about either the summary hearing or the notice of the charges against them. We agree with the plaintiffs' lawyers that the evidence does not support their conviction.

### 1. The Evidence Was Insufficient for a Reasonable Finder of Fact to Have Found that the Plaintiffs' Lawyers Willfully Violated the Revised Protective Order by Making Unauthorized Statements to a Reporter.

The plaintiffs' lawyers persuasively argue that no reasonable finder of fact could have found beyond a reasonable doubt that they willfully made comments to the Miami Herald reporter that violated the revised protective order. At the in camera portion of the show cause hearing, the plaintiffs' lawyers denied telling the Miami Herald reporter about the declaration and testified that the reporter probably obtained the declaration from the witness or by observing the public filings in the case. The record contains no evidence to the contrary and, as Drummond admits, "[t]here is no admissible evidence in the record as to how the reporter actually learned of the declaration."

Even if we were to assume that the plaintiffs' lawyers's explanations in the in camera hearing were false, there is still no evidence that the plaintiffs' lawyers ever made a statement that violated the revised protective order. The information in the Miami Herald article is the kind that the revised protective order explicitly allowed the attorneys to disclose to the press: "allegation[s] . . . made in th[e] case

16

[and] [i]nformation properly contained in the public record." The <u>Miami Herald</u> article neither quoted the plaintiffs' lawyers nor contained information that would not have been available to anyone observing public filings in the case. If the district court based its finding of contempt on the circumstantial evidence of the existence of the article, that evidence was insufficient to prove a willful violation beyond a reasonable doubt.

2. The Revised Protective Order Did Not Forbid with Reasonable Specificity the Filing of the Declarations.

The plaintiffs' lawyers argue that the revised protective order did not prohibit the filing of the declarations or, if somehow read to prohibit the filing, was not reasonably specific. Again, we agree. "An order meets the reasonable specificity requirement only if it is a clear, definite, and unambiguous order requiring [or prohibiting] the action in question." <u>In re E.I. DuPont de Nemours & Co.–Benlate Litig.</u>, 99 F.3d 363, 370 (11th Cir. 1996) (internal quotation marks omitted). "The reasonableness of the specificity of an order . . . must be evaluated in the context in which it is entered and the audience to which it is addressed." <u>Turner</u>, 812 F.2d at 1565.

The revised protective order prohibited "making or authorizing extrajudicial comments, and disseminating . . . information to the media and the public

17

concerning . . . the expected testimony of a party or witness; and [m]atters that counsel know, or reasonably should know, will be inadmissable at trial, and would if disclosed create a substantial risk of prejudicing an impartial trial." Unlike the original protective order, the revised protective order did not address what evidence the attorneys could reference in public filings. The revised protective order also did not address what motions should be filed under seal, what supporting documents should be filed under seal, or what documents the district court might submit to the State Department.

When the revised protective order is read in context with other parts of the record, it is unclear that the revised protective order prohibited filing the declarations as part of the public record. The revised protective order allowed attorneys to make unembellished statements about allegations and public filings, such as the allegations in the declarations, and the district court both had ordered the parties to unseal or redact most previous filings and warned the parties to stop routinely requesting that documents be filed under seal. The letter to the State Department and the order prohibiting the parties from contacting the State Department also were filed in the public record. To the extent the revised protective order can be interpreted to curtail public filings at all, its import in the context of the other rulings of the district court is ambiguous.

Drummond argues, and the district court stated in its later order granting a stay of the fine pending appeal, that the revised protective order incorporated the definition of "extrajudicial comments" in the previous protective order. Drummond contends that the revised protective order prohibited any filing determined not to be a "valid part of open legal proceedings," with Drummond's emphasis added. Drummond argues that these declarations were not "valid" but offers no guidance about defining the term "valid."

The argument of Drummond is based on a strained interpretation of the revised protective order, which does not define "extrajudicial comments" and does not reference the ambiguous definition in the original protective order. Based on our review, the revised protective order was intended to replace, not supplement, the original protective order. It is also far from clear that the ambiguous definition in the original order is the most apt definition of "extrajudicial." The most widely used legal dictionary, for example, defines "extrajudicial" as "outside the functioning of the court system" or "any utterance made outside of court." Black's Law Dictionary 497 (8th ed. 2005).

Even if we were to assume that the definition of "extrajudicial" proffered by Drummond is correct, that definition still would not have prohibited with reasonable specificity the plaintiffs from filing the declarations. Until the district

19

court held the plaintiffs' lawyers in contempt, no order of the district court had identified filing any unsealed motion or evidence as "[in]valid." When the plaintiffs' lawyers filed the first motion and attached declarations, neither the district court nor Drummond suggested that the filing was contemptuous. That sua sponte suggestion of the district court came only after the plaintiffs' lawyers filed their motion for reconsideration. The district court apparently expected the plaintiffs' lawyers to apply an ambiguous order by importing a definition from a previous order that itself is ambiguous. No "reasonable finder of fact could . . . conclude that [the] attorneys were clever enough to figure out" that the bar of extrajudicial comments in the revised protective order clearly prohibited filing these declarations, especially in the light of the warning of the district court that the parties not routinely request that documents be filed under seal. In re Benlate Litig., 99 F.3d at 372.

### B. The District Court Abused Its Discretion in Refusing to Unseal the Motions and Declarations.

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839, 98 S. Ct. 1535, 1541 (1978), and "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process," Chi. Tribune, 263 F.3d at

20

1311. This right "includes the right to inspect and copy public records and documents." Id. (citation omitted). This right of access is not absolute, however. The right of access does not apply to discovery and, where it does apply, may be overcome by a showing of good cause.

Because "[t]he prospect of all discovery material being presumptively subject to the right of access would likely lead to an increased resistance to discovery requests," we have recognized an exception to the public right of access. Id. at 1312 n.10. "[D]ocuments filed in connection with motions to compel discovery are not subject to the common-law right of access," id. at 1312-13, but "material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right," id. at 1312. We have explained that the need for public access to discovery is low because discovery is "essentially a private process . . . the sole purpose [of which] is to assist trial preparation." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986).

The district court erroneously concluded that the sealed documents "were not subject to the common law right of public access" because "no dispositive motion was before the court." Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access. Chi. Tribune, 263 F.3d at 1312 (difference between "material filed with

21

discovery motions and material filed in connection with more substantive motions"); see also Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164 (3d Cir. 1993) ("[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."). A motion that is "presented to the court to invoke its powers or affect its decisions," whether or not characterized as dispositive, is subject to the public right of access. United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995); see also Leucadia, 998 F.2d at 164 (common law right applies to motion to approve settlement agreement); In re Cont'l Ill. Sec. Litig., 732 F.2d 1302, 1309 (7th Cir. 1984) (right of access applies to motion to terminate derivative claim).

Ordinarily, the plaintiffs would have been free to petition the State Department not to intervene in their case with whatever materials they chose, but an order of the district court, for reasons that are not apparent, made that privilege contingent on an exercise of judicial power. The object of the motion to provide the declarations to the State Department was not discovery. Because the plaintiffs' motion asked the court to vary from its previous public order and did not involve the disclosure of discovery materials, the common law presumption of public access attached.

22

The common law right of access may be overcome by a showing of good cause, which requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." Chi. Tribune, 263 F.3d at 1309. "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." Id. at 1315. In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. See In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987); Shingara v. Skiles, 420 F.3d 301, 305-06 (3d Cir. 2005); Amodeo, 71 F.3d at 1050-51. A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598, 98 S. Ct. 1306, 1312 (1978); Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 464-74 (1991).

Although "[d]ecisions less central to merits resolutions implicate lesser

23

right-to-access considerations," 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2035 (2d ed. 1994), the plaintiffs' motion for reconsideration was related both to the merits of the underlying controversy and the conduct of the court. The motion concerned the advisory opinion sought by the district court, which in turn involved an affirmative defense of Drummond. As part of its decision to seek the opinion of the State Department, the district court assumed the role of gatekeeper between the parties and the executive branch of the federal government. The sealed documents involve public concerns that are at the heart of the interest protected by the right of access: "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government." Nixon, 435 U.S. at 598, 98 S. Ct. at 1312.

Drummond argues that it has "enormous" interests in keeping the sealed declarations confidential, but we disagree. Drummond did not produce the declaration of the Colombian official during discovery and has neither a privacy nor a proprietary interest in it. Cf. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34, 104 S. Ct. 2199, 2208 (1984) (affirming an order prohibiting the dissemination of information gained by discovery so long as the parties could disseminate "identical information . . . gained through means independent of the court's processes").

Although court files that instigate public scandal or libel may be sealed, the declarations in question support the already-public complaint against Drummond and its executives. Although Drummond denies the allegations of that complaint, its denial is not a legitimate basis for sealing the evidence.

The district court provided three reasons for sealing the declarations and motion for reconsideration: the documents would prejudice the right of Drummond to a fair trial by creating a "firestorm" in the media; the plaintiffs' lawyers filed the documents with the bad faith intention of circumventing the revised protective order; and the motion and declarations were irrelevant. These are "stereotyped and conclusory statements" that do not establish good cause. United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); see also Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 15, 106 S. Ct. 2735, 2743 (1986) ("right of access cannot be overcome by . . . conclusory assertion"); Wright, Miller & Marcus, supra, § 2035 (same). We address each in turn.

The district court speculated that reporting on the documents would prejudice the jury pool, but there are at least three problems with this rationale. First, the record does not contain any evidence to support this finding, and "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically . . . to an unfair trial." Neb. Press Ass'n v. Stuart, 427 U.S. 539, 565,

25

96 S. Ct. 2791, 2805 (1976). Second, because the substance of the Colombian official's declaration had already been reported by the Miami Herald, sealing these documents could not remedy any of the highly unlikely harms that could be caused by pretrial publicity. Third, the district court failed to explain why its decision to allow the Drummond attorneys to comment about the declaration of the government official was insufficient to counteract any purported prejudice. "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." Whitney v. California, 274 U.S. 357, 377, 47 S. Ct. 641, 649 (1927) (Brandeis, J., concurring); see also Robert D. Richards & Clay Calvert, Counterspeech 2000: A New Look at the Old Remedy for "Bad" Speech, 2000 BYU L. Rev. 553.

The district court also failed to substantiate its finding that allowing the public access to the documents would vindicate improper motives of the plaintiffs' lawyers. As we explained in the previous section, the plaintiffs' lawyers did not violate any clear directive of the revised protective order, so the documents were not properly sealed incident to enforcing that order. Even if the plaintiffs' lawyers should have been punished, the sanction should not have been to close judicial proceedings to the public. Cf. Brown v. Advantage Eng'g, Inc., 960 F.2d 1013,

26

1016 (11th Cir. 1992) (that both parties want to seal court documents "is immaterial" to public right of access).

The remaining reason of the district court—that the motion and declarations were irrelevant to the proceedings—also fails. Because the district court ordered the parties not to contact the State Department without its permission, it is difficult to comprehend how a motion to send more information to the State Department "far exceeded the scope of the [inquiry to the State Department]," even if the request was ultimately denied. It also does not follow from the denial of that motion that the motion requesting reconsideration was so irrelevant or improper as to be sealed. Without a more specific showing that the declarations and the motion for reconsideration were abusive or improper, good cause for sealing the documents was not established.

Finally, the district court did not offer any explanation for sealing or refusing to unseal the motions of Drummond to seal the plaintiffs' filings. Drummond also offers no argument on appeal that there is good cause for these documents to remain sealed. Having reviewed these motions, we are unable to discern any reason to keep them sealed.

The public has a right to access these documents that is more than powerful enough to overcome the negligible interest of Drummond in preventing public

access. The reasons given for sealing the documents by the district court were conclusory and speculative, and sealing these documents was an exaggerated remedy for the harms the district court identified. The district court abused its discretion in sealing these documents.

## IV. CONCLUSION

The order of the district court that held the plaintiffs' lawyers in contempt is **VACATED**. The order of the district court that sealed the evidence attached to the motion to submit additional information to the State Department, the order of the district court that sealed the motion for reconsideration, and the order of the district court that denied Jackson's request to unseal are **REVERSED**.

**VACATED** in part and **REVERSED** in part.