**UNITED STATES of America**

v.

**Joel STEINGER, et al.**

**Case No. 08–21158–CR.**

United States District Court, S.D. Florida, Miami Division.

April 28, 2009.

---

Andrew K. Levi, AUSA, United States Attorney's Office, Miami, FL, for United States of America.

Edward R. Shohat, Esq., Bierman Shohat Lowewy & Kegerreis, Jose Quinon, Scott A. Srebnick, Esq., Miami, FL, Richard G. Lubin, Esq., Richard G. Lubin PA, West Palm Beach, FL, Joel Hirschhorn, Esq., Hirschhorn & Bieber, Coral Gables, FL, for Joel Steinger, et al.

## ORDER DENYING, WITHOUT PREJUDICE, NEWSPAPERS' MOTION FOR ACCESS TO JUDICIAL RECORDS AND PROCEEDINGS

ADALBERTO JORDAN, District Judge.

In this highly-publicized criminal case, a grand jury has charged that the defen-

dants—Joel Steinger, Steven Steiner, Michael McNerney, and Anthony Livoti, Jr.—committed various federal crimes (conspiracy to commit mail fraud and wire fraud, mail fraud, wire fraud, and conspiracy to commit money laundering) relating to their involvement in Mutual Benefits Company, a now-defunct business which sold viatical and life settlements as investments to the general public. According to the indictment, Mutual Benefits raised over $1 billion from over 30,000 investors but ultimately became a Ponzi scheme, resulting in investor losses of $837 million.

*The Miami Herald* and *The South Florida Sun–Sentinel,* which have been allowed to intervene, seek access to various sealed documents filed by the defendants and the government, as well as the sealed transcripts of hearings on the sealed filings.[1] I allowed counsel for the newspapers to argue their positions orally at a hearing held on March 25, 2009, *see, e.g., United States v. Ochoa–Vasquez,* 428 F.3d 1015, 1030 (11th Cir.2005) (a court "must . . . provide members of the public and the press who are present with notice and an opportunity to be heard on a proposed closure"), but I did not allow them to be present while I heard arguments on the sealed filings from the defendants and the government, finding that closure of that portion of the proceeding was warranted under the standards articulated in *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*), and *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 14–15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986)(*Press Enterprise II*).[2] Since that hearing, I have unsealed various documents, and ordered the public filing of redacted versions of other motions and orders.

This order concerns the approximately 30 documents which are still completely or partially under seal. These sealed documents relate mainly to three motions filed by certain of the defendants. The sealed documents include numerous motions to seal filed by the defendants and the government [D.E. 8, 11, 27, 55, 58, 60, 70, 73, 87, 98, 104, & 112], an order granting a motion to seal [D.E. 71], a motion for extension of time [D.E. 69], the motions and supplements to the motions [D.E. 9, 12, 28, 59, 74, 92], responses and objections to the motions [56, 61, 88, 105], replies to the responses and objections [67, 95, 106, 111], Department of Justice proffers concerning a grand jury investigation [10, 113], the government's response to the *Sun–Sentinel's* motion to intervene and for access [D.E. 99], and transcripts of hearings on the sealed filings.[3] For the reasons which follow, the motions and requests of the *Miami Herald, Sun–Sentinel,* and *Daily Business Review* for access to the sealed documents and transcripts are denied without prejudice.

### I. Applicable Standards

"The press and public enjoy a qualified First Amendment right of access to criminal trial proceedings. Open criminal proceedings have been an 'indispens-

---

**1.** *The Miami Daily Business Review,* by letter, has requested the same relief. A copy of this letter has been filed in the public record.

**2.** This order also supplements the findings I previously made to seal the portion of the hearing addressing the sealed filings. *See generally United States v. Valenti,* 987 F.2d 708, 713 (11th Cir.1993) ("we do not interpret *Press–Enterprise I* to require a trial court

to articulate findings that a closed bench conference is necessary and narrowly tailored to preserve higher values *before* a closed bench conference occurs").

**3.** By separate order, redacted versions of some of these sealed documents [D.E. 55, 58, 69, 71, & 73] have been filed in the public record.

able attribute of an Anglo–American trial' for centuries." *Ochoa–Vasquez,* 428 F.3d at 1028–29 (citations omitted). "This right extends not only to the criminal trial itself, but also to other integral parts of the trial process such as voir dire proceedings and preliminary hearings," as well as docket sheets. *Id.* at 1029 & n. 14. In order to overcome the First Amendment presumption of openness, a party must show "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 1030 (quoting *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. 819). When "sealing proceedings or documents, a court must articulate the overriding interest along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Ochoa–Vasquez,* 428 F.3d at 1030.

 There also exists a common-law right of access to court documents and filings. For example, a "motion that is presented to the court to invoke its powers or affect its decisions, whether or not characterized as dispositive, is subject to the public [common-law] right of access." *Romero v. Drummond Co.,* 480 F.3d 1234, 1246 (11th Cir.2007) (internal quotation marks and citation omitted). This common-law right of access "may be overcome by a showing of good cause, which requires balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Id.* (internal quotation marks and citation omitted). In conducting this balancing, federal courts consider factors such as "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the informa-

tion, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id.* " '[D]ecisions less central to merits resolutions implicate lesser right-to-access considerations[.]' " *Id.* (quoting 8 C.A. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2035 (2d ed. 1994)).

As the Eleventh Circuit has explained, findings in a public order as to the need for sealing "need not be extensive. Indeed, should a court say too much the very secrecy which sealing was intended to preserve could be impaired. The findings need only be sufficient for a reviewing court to be able to determine, *in conjunction with a review of the sealed documents themselves,* what important interest or interests the district court found sufficiently compelling to justify the denial of public access." *United States v. Kooistra,* 796 F.2d 1390, 1391 (11th Cir.1986) (emphasis added). This order hopefully satisfies this standard.[4]

## II. THE SEALED DOCUMENT

The sealed filings at issue here—i.e., the motions, responses, replies, orders, and transcripts—concern matters relating to and arising from a separate and ongoing federal grand jury corruption investigation which is being coordinated by the Department of Justice's Public Integrity Section. Although it has not yet heard live testimony from witnesses, the grand jury has issued subpoenas and is currently considering the conduct of various individuals, none of whom are defendants in this criminal case. The matters underlying the grand jury investigation are not factually

---

4. If it does not, I will gladly prepare a sealed order which discusses the contents of the sealed documents and transcripts.

related to the charges in this case (i.e., they are not related to Mutual Benefits).

The Public Integrity Section has indicated, in its sealed filings, that six past or present public officials have been cleared of any wrongdoing in the grand jury investigation (i.e., they had no knowledge of, or participation in, any of the alleged wrongdoing). The Public Integrity Section has also represented that the investigation is ongoing as to other persons—including some other former and present public officials—though no proposed indictments have been presented to the grand jury. The sealed filings and transcripts concern the portion of the grand jury investigation in which the six former or present public officials have been exonerated. Yet disclosure of that portion of the grand jury investigation would necessarily reveal matters associated with the ongoing portion of the investigation.

### III. DISCUSSION

■ The government argues that disclosure at this time would reveal and disrupt the grand jury investigation, and that this is a sufficient overriding reason to keep the documents and transcripts sealed. On this record, I agree. "The proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), and this expectation of privacy is generally codified in Rule 6(e) of the Federal Rules of Criminal Procedure. *See also Press Enterprise II*, 478 U.S. at 8–9, 106 S.Ct. 2735 (recognizing that some kinds of government operations, like grand jury proceedings, would be "totally frustrated" if "conducted openly"); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (noting "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts"). If the sealed documents and

transcripts were made available to the press and public at this time, the nature of the grand jury investigation would come to light, and those individuals whose actions are being looked at would—by learning of the nature of the investigation—likely become aware that they are subjects or targets of the grand jury. Such knowledge, in turn, would compromise the investigation and might also lead to the destruction of evidence. In addition, witnesses might be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of their testimony. *See Douglas Oil*, 441 U.S. at 218–19, 99 S.Ct. 1667. These overriding concerns warrant sealing at this time. *See, e.g., Valenti*, 987 F.2d at 714 (affirming district court's sealing of transcripts and *in camera* motions in criminal bribery case based on finding that sealing was a "necessary means to achieving the government's compelling interest in the protection of a continuing law enforcement investigation"). This interest in protecting the integrity of an ongoing grand jury investigation also establishes good cause for denying common-law access at this time.

There is a second reason why sealing is currently appropriate. As noted above, the Public Integrity Section has determined that six former or present public officials had no knowledge of, or involvement in, the alleged wrongdoing, and its probe continues against others who have yet to be indicted or cleared. The sealed documents and transcripts refer to many of those individuals by name. Disclosure of those names, and the matters being investigated, could have devastating consequences for those persons who have been cleared of any misconduct, as well as for those still under investigation. As William Shakespeare put it centuries ago, "[t]he purest treasure mortal times afford is spotless reputation; that away, men are but guilded loam, or painted clay." W.

SHAKESPEARE, RICHARD II, ACT 1, SCENE 1, lines 177–78 (1597). And if it is true that "[a]t every [w]ord a [r]eputation dies," A. POPE, THE RAPE OF THE LOCK, CANTO III, line 16 (1712), then public access to the sealed documents and transcripts here could easily kill many reputations. This overriding interest is, I believe, of a higher value under *Press–Enterprise I* so as to warrant sealing, and provides good cause under the common-law access balancing test to preclude disclosure.

Sealing, in fact, is strongly supported by the former Fifth Circuit's decision in *In re Smith*, 656 F.2d 1101 (5th Cir.1981), which is binding precedent in the Eleventh Circuit pursuant to *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*). In *Smith*, two companies, pursuant to informations, entered guilty pleas in separate but related cases to bribing an official of the Army and Air Force Exchange Service (AAFES). At the change of plea hearings, the Assistant U.S. Attorney read and filed a "factual resume" which, "in addition to describing the events immediately involved in [the respective company's] plea of guilty"—that the company had paid an AAFES purchasing agent in excess of $15,000 for the purpose of influencing procurement orders—further stated that the company had paid certain sums to other AAFES employees. The Assistant U.S. Attorney specifically named Edward Smith, the head of the AAFES, as one of those other employees who had received payments from the companies. *See Smith*, 656 F.2d at 1103. Neither of the informations mentioned, however, Mr. Smith as having been involved in the bribery scheme. *See id.* at 1103 n. 4. After the change of plea hearings, the media reported that, "as a matter of public and official courtroom record, Mr. Smith had been paid bribe moneys by various businesses dealing with AAFES." *See id.* at 1103. Several months later, Mr. Smith, through counsel, asked the district judges who took the guilty pleas to strike his name from the "factual resumes" or to seal the records in those proceedings. Mr. Smith argued that he had been singled out solely for publicity purposes, that he had testified voluntarily before the grand jury, that he had not been indicted, that his name and reputation had been harmed, and that the conduct of the Assistant U.S. Attorney was unethical. Mr. Smith requested that his motions be sealed if the requested relief was granted. Not surprisingly, the media reported on the motions filed by Mr. Smith. *See id.* at 1104. The district judges denied Mr. Smith's motions, and several days later Mr. Smith notified AAFES that he was going to retire. The AAFES approved his retirement, but suspended him from further participation in the executive management program for high-level employees because "he had been accused of wrongdoing in the two factual resumes[.]" *See id.* at 1105.

Mr. Smith sought a writ of mandamus—a drastic and extraordinary remedy, *see In re Bellsouth*, 334 F.3d 941, 953 (11th Cir. 2003)—from the former Fifth Circuit. Finding that the "scales of constitutional liberty tip[ped] in favor of the individual," *see Smith*, 656 F.2d at 1102, the former Fifth Circuit granted the petition for a writ of mandamus. It noted that prior circuit decisions had "found no legitimate governmental interests could be served by stigmatizing private citizens as criminals while not naming them as defendants," and reiterated that "no legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights." *See id.* at 1106. Because listing Mr. Smith's name and alleged receipt of money from the companies in question was not relevant in any way to the guilty pleas entered by those companies, the former Fifth Circuit concluded that "the inclusion of Mr. Smith's name in

the factual resumes were a violation of his liberty and property rights guaranteed by the Constitution and h[eld] that [Mr. Smith's] motions to strike and seal should have been granted." *See id.* at 1107. It ordered the clerk of the district court to "completely and permanently obliterate and strike" any and all references to Mr. Smith in the criminal cases, and directed that all documents filed in the district court in relation to Mr. Smith's motions to strike or seal should be sealed "until further order of this Court." Finally, it directed that all "pleadings, records, documents, orders, or other papers" concerning the petition for a writ of mandamus should be sealed and kept under seal "until further order of this Court." *See id.* at 1107.

*Smith* is not directly on point, but it is similar in that it involves the privacy rights and reputational interests of someone who, though not charged or indicted, was nevertheless linked to a criminal grand jury investigation. Here the rights of a number of former or present public officials—six of whom have been exonerated—are at issue. Those individuals, like Mr. Smith, do not have a forum in which to defend themselves, and their careers and reputations could suffer fatal blows if the details of the grand jury investigation were to become public at this time. At this point, while the grand jury investigation is still ongoing, the scales tip strongly in favor of sealing. *See also United States v. Smith,* 776 F.2d 1104, 1105–07, 1113–15 (3rd Cir.1985) (affirming district court's denial of access to sealed portion of bill of particulars naming unindicted co-conspirators in part because of possible harm that could come to those persons if disclosure were allowed); *In re Petition of American Historical Association,* 62 F.Supp.2d 1100, 1103 (S.D.N.Y.1999) ("A cornerstone of the grand jury secrecy rule is the protection of the reputations and well-being of individuals who are subjects of grand jury proceedings, but are never indicted.... [T]he

rule of secrecy seeks to protect ... unindicted individuals from the anxiety, embarrassment, and public castigation that may result from disclosure.") (citing, among other cases, *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983)).

Because a sealing order must be narrowly tailored under the First Amendment, I have considered the possibility of unsealing redacted portions of the sealed documents and transcripts, but conclude that such an option is simply not feasible now. As in *Valenti,* "the release of a redacted version of the transcripts [and documents] ... [is] inadequate to protect the government's interest in the ongoing investigation at this time." 987 F.2d at 715. And if the sealed documents and transcripts were redacted so as to eliminate all references to the matters related to the grand jury investigation, the redactions would be so heavy as to make the released versions incomprehensible and unintelligible.

## IV. CONCLUSION

The newspapers' motions for access to the sealed documents and transcripts are denied without prejudice.

At this time, sealing of certain documents and transcripts is appropriate. It is possible, of course, that things may change once the grand jury completes its investigation and/or indictments are returned. At that point, certain documents may be completely unsealed, and others might be filed in public record with certain redactions. Accordingly, the government is directed to file with the clerk, under seal and ex parte, monthly status reports as to the grand jury investigation. Those reports are due the first day of each month, beginning on June 1, 2009. The government shall also file, in the public record, a notice indicating that it has filed the monthly status report under seal and ex parte.

For now, the sealed documents and transcripts will remain under seal, and any orders addressing the merits of the sealed motions will be filed under seal (with notice to the public that a sealed order has been entered with respect to a sealed motion). The newspapers are free to request access in the future. If circumstances warrant a modification of this order, I will issue an amended order, but only after giving notice to, and hearing from, the six former and present public officials who were cleared in the grand jury investigation and whose privacy rights and reputational interests are at stake.[5]

---

5. The government is ordered to provide a copy of this order to those individuals who have been exonerated of any wrongdoing so that they are aware of the issues relating to the sealed documents and transcripts.