[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12402
_____

D.C. Docket No. 2:17-cv-02083-KOB

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
HOLMAN CF WARDEN,
DONALDSON CF WARDEN,

Defendants - Appellants,

versus

ADVANCE LOCAL MEDIA, LLC,
d.b.a. Alabama Media Group,
MONTGOMERY ADVERTISER,
THE ASSOCIATED PRESS,

Intervenors - Appellees.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____
(March 18, 2019)

Before TJOFLAT, WILSON, and JORDAN, Circuit Judges.

WILSON, Circuit Judge:

This appeal concerns the common law right of access to documents upon

which a court has relied to decide issues in a case. In the underlying suit, death

row inmate Doyle Lee Hamm brought an as-applied challenge under 42 U.S.C. § 1983, arguing that Alabama's attempt to execute him via lethal injection would violate the Eighth Amendment.  During the litigation, Alabama submitted its lethal injection protocol to the district court.  The protocol was never formally filed with the court, but was subjected to expert testimony, debated at hearings, and relied upon by the court in denying both Alabama's motion for summary judgment and Hamm's request for a preliminary injunction.  After Hamm's case was dismissed, members of the press intervened, seeking access to the protocol.  The district court granted these intervenors access to a redacted version of the protocol.  The Commissioner of the Alabama Department of Corrections now appeals, arguing that the court erred in (1) allowing the press to intervene and (2) determining that the protocol was a judicial record subject to the common law right of access.  After careful consideration and the benefit of oral argument, we affirm.

## I. Factual and Procedural Background

Doyle Lee Hamm was sentenced to death in 1987 and, after a series of unsuccessful direct and collateral challenges to his sentence, was set to be executed in February 2018.  In December 2017, Hamm filed an action in the Northern District of Alabama under 42 U.S.C. § 1983, challenging the constitutionality of Alabama's lethal injection protocol as applied to him, because he suffered from "severely compromised veins" due to drug use, Hepatitis C, and cancer.  *Hamm v.*

2

*Dunn*, 302 F. Supp. 3d 1287 (N.D. Ala. 2018), *vacated and remanded sub nom. by Hamm v. Comm'r, Ala. Dep't of Corr.*, No. 18-10473 (11th Cir. Feb. 13, 2018). Hamm sought to enjoin Alabama from using the protocol to perform his execution.

In January 2018, Alabama moved for summary judgment. The district court ordered expedited briefing and scheduled an evidentiary hearing for January 31 to address Alabama's dispositive motions and Hamm's request for injunctive relief. After the court entered a protective order to keep the lethal injection protocol confidential, Alabama provided a copy of the protocol to the court for *in camera* review and gave Hamm a redacted copy of the protocol. Likewise, the portion of the evidentiary hearing that focused on the protocol was conducted *in camera*. Both parties and the court discussed the contents of the lethal injection protocol, but neither party moved to admit the protocol into evidence or attach it as an exhibit to any motion or pleading.

Less than three weeks before Hamm was set to be executed, the district court denied Alabama's motion for summary judgment and temporarily stayed Hamm's execution. In its publicly available orders denying summary judgment, the district court summarized Alabama's lethal injection protocol and discussed how the protocol applied to Hamm's specific medical conditions. This Court vacated the district court's stay but directed the court to obtain an independent medical examination and make any concomitant factual findings by February 20—two days

3

before Hamm's execution date.  The district court held another *in camera* hearing on February 16 to hear testimony from the independent medical examiner.  The examiner testified that Hamm had accessible and usable veins in his lower extremities.

Four days later, the district court denied Hamm's request for a preliminary injunction, summarizing the contents of the February 16 hearing and reasoning that Alabama's lethal injection protocol, as applied to Hamm, did not present "sufficiently imminent dangers" and was not likely to result in serious illness or needless suffering that would violate the Eighth Amendment.  Hamm appealed. This Court affirmed the district court but ordered Alabama to have ultrasound technology and a doctor at the execution.

On the day of his execution—February 22, 2018—Hamm petitioned the Supreme Court for a stay and writ of certiorari.  His petition was denied.  Alabama then attempted to execute Hamm, but after several unsuccessful efforts to insert a needle, called off the execution an hour before its midnight deadline.  The botched execution attempt received national media coverage.

Hamm filed a second amended complaint describing Alabama's failed efforts to execute him, but both parties agreed to dismiss these claims (some with prejudice and some without prejudice) on the same day that the claims were filed. Two days later, the district court dismissed the action.  On March 28, the same day

4

the court dismissed the action, Alabama Media Group,[1] the Montgomery

Advertiser, and the Associated Press (collectively, Intervenors) moved to intervene

in Hamm's case under Rule 24 of the Federal Rules of Civil Procedure to unseal

the records, transcripts, and briefs discussing Alabama's execution protocol.  On

March 30, the court granted intervention as a matter of right under Rule 24(a),[2] but

reserved ruling on the request for access to the protocol and related documents.  In

response to the request for access, Alabama asked the court to reconsider its

decision to allow intervention and, alternatively, argued that the request for access

should be denied because (1) the lethal injection protocol was not a publicly

accessible judicial record, and (2) the Intervenors had no common law right of

access to the protocol.

The district court denied Alabama's request to reconsider intervention and

granted Intervenors' motion to unseal the protocol and related records.  The court

emphasized that Hamm's case had occurred under rushed circumstances, and

concluded that failure to formally file the protocol did not make it a non-judicial

record because the court "needed and relied upon the protocol to resolve [the

State's] motion for summary judgment and Mr. Hamm's request for injunctive

---

[1] Advance Local Media, an Intervenor in this case, does business as the Alabama Media Group.
[2] The district court noted that permissive intervention was proper under Rule 24(b) as well.

5

relief," and other judicial records referred to the protocol.[3]  The court also found that Alabama failed to show interests sufficient to overcome the public's common law right of access to the protocol.

The district court issued two orders.  The first order clarified what it unsealed, including redacted versions of (1) the protocol, (2) the sealed transcript of the January 31 *in camera* evidentiary hearing, (3) the sealed transcript of the February 16 closed medical examiner hearing, and (4) Hamm's motion for leave to supplement his first amended complaint.  The second order instructed Alabama to file, under seal, a redacted copy of the protocol for the court to review before releasing it.  Alabama appealed and moved to stay the release of the protocol pending this appeal.  The district court granted Alabama's motion to stay; we now consider the state's appeal.

## II. The Common Law Right of Access to Judicial Records

Whether a document is a "judicial record" subject to the common law right of access is a question of law we review de novo.  *Accord In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013).  We review a decision to unseal documents for abuse of discretion.  *FTC v. AbbVie Prods., LLC*, 713 F.3d 54, 61 (11th Cir. 2013).  Under the abuse of discretion

---

[3] For example, Hamm's sealed motion for leave to supplement his first amended complaint quotes both the protocol and the January 31 hearing discussing the protocol.

6

standard, a court has a range of choices available to it.  *See McLane Co., Inc. v. EEOC*, 137 S. Ct. 1159, 1169 (2017); *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312 (1978).  The media and public presumptively have a right to access judicial records.  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam).  The common law right of access to judicial records "'establish[es] a general presumption that criminal and civil actions should be conducted publicly' and 'includes the right to inspect and copy public records and documents.'  It is 'an essential component of our system of justice' and 'is instrumental in securing the integrity of the process.'" *AbbVie Prods., LLC*, 713 F.3d at 62 (quoting *Chicago Tribune*, 263 F.3d at 1311).[4]  Access to public and judicial records protects "the citizen's desire to keep a watchful eye on the workings of public agencies, and . . . a newspaper publisher's intention to publish information concerning the operation of government." *Nixon*, 435 U.S. at 597–98,

---

[4] In the past, we have recognized that both judicial proceedings and judicial records are presumptively available to the public because "[j]udges deliberate in private but issue public decisions after public arguments based on public records. . . .  Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)).

7

98 S. Ct. at 1312 (citations omitted); *see also Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (finding that these public concerns were at the "heart of the interest protected by the right of access").  Judges should exercise discretion in deciding to release judicial records and should exhibit a "sensitive appreciation of the circumstances that led to their production."  *Nixon*, 435 U.S. at 603, 98 S. Ct. at 1315.[5]

## A.  Judicial Records

To determine whether Alabama's lethal injection protocol is subject to the common law right of access, we must first determine whether the protocol constitutes a judicial record.  Citing our prior decisions in *Chicago Tribune* and *AbbVie Products*, Alabama argues that its lethal injection protocol is not a judicial record because its protocol was never formally filed with the district court and is not in the electronic docket.  Alabama's interpretation is foreclosed by precedent in *Newman v. Graddick*, and thus we reject Alabama's argument.

In both *Chicago Tribune* and *AbbVie Products*, materials accompanying motions were filed with a district court during the course of litigation.  Both decisions acknowledged the filed status of the materials while emphasizing a

---

[5] Courts retain jurisdiction to unseal judicial records and may allow parties to intervene well after judgment in a dispute.  *See, e.g.*, *AbbVie Prods., LLC*, 713 F.3d at 58 (affirming district court determination to modify protective order after three years); *cf. Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015–16 (11th Cir. 1992) (recognizing that a district court had jurisdiction to decide a motion to intervene to unseal records that had been sealed more than six months prior).

8

distinction between documents filed with discovery motions and those filed with substantive motions requiring judicial action.  *See AbbVie Prods., LLC*, 713 F.3d at 63–64 ("[W]hether a document is a judicial record depend[s] on the type of filing it accompanied.  A complaint and its exhibits, which are integral to the 'judicial resolution of the merits' of any action, are surely 'subject to the common-law right.'"); *Chicago Tribune*, 263 F.3d at 1312 ("[M]aterial filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right.").

In the present case, unlike in *AbbVie Products* and *Chicago Tribune*, the Intervenors are seeking access to materials that did not accompany motions filed in the district court.  The specific language in *AbbVie Products* and *Chicago Tribune* regarding materials *filed* with motions to the court, then, does not clearly apply to the facts before us.  Our decision in *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983), is more instructive.  In *Newman*, a district court approved a consent decree under which state officials would reduce overcrowding in county jails; the court later ordered the state to submit lists of prisoners least deserving of incarceration as overcrowding worsened.  696 F.2d at 798–99.  In response to requests from the press, the district court then unsealed these lists.  Although the prisoner lists were not formally filed with the district court and did not appear on the court's docket,

9

we held on appeal that the lists had become "part of the court proceedings in the case" and thus considered them subject to the common law right of access. *Id.* at 803. In light of *Newman*'s result, we hold that materials submitted by litigants—whether or not they are formally filed with the district court—that are "integral to the 'judicial resolution of the merits'" in any action taken by that court are subject to the common law right of access and the necessary balancing of interests that the right entails. *See AbbVie Prods., LLC*, 713 F.3d at 64 (quoting *Chicago Tribune Co.*, 263 F.3d at 1312).

Alabama asserts that, under *AbbVie Products* and *Chicago Tribune*, materials must be formally filed with a court to constitute judicial records. If these cases truly did impose such a formal filing requirement, they would conflict with our decision in *Newman*. To the extent that Alabama's interpretation of *AbbVie Products* and *Chicago Tribune* conflicts with *Newman*, *Newman* controls. "When we have conflicting case law, we follow our oldest precedent." *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013); *see also Arias v. Cameron*, 776 F.3d 1262, 1273 n.8 (11th Cir. 2015) ("When circuit authority is in conflict, a panel should look to the line of authority containing the earliest case because a decision of a prior panel cannot be overturned by a later panel.").

The mere filing of a document does not transform it into a judicial record. *See Chicago Tribune*, 263 F.3d at 1312. For example, we have determined that

10

when documents have been filed in discovery, they only constitute judicial records if they are filed with pretrial motions "that require judicial resolution of the merits" of an action. *Id.* Courts generally should not permit public access to discovery materials that are not filed with substantive motions because discovery is "essentially a private process" meant to "assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). Filed or unfiled materials unearthed during discovery may be private, and a large portion of discovery materials will not assist a court in resolving matters in a case. We have never held, however, that filing is *required* in order to turn a document into a judicial record— especially when that document may help a court to resolve the merits of an action. Instead, we have attempted to apply "a more refined approach" that accounts for "the tradition favoring access." *Chicago Tribune*, 263 F.3d at 1312. Other courts have taken similar approaches. *Accord United States v. Wecht*, 484 F.3d 194, 208 (3d Cir. 2007), *as amended* (July 2, 2007) ("In general, the common law right attaches to any document that is considered a judicial record, which depends on whether the document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." (internal quotation marks omitted)); *Bond v. Utreras*, 585 F.3d 1061, 1073–75 (7th Cir. 2009) (holding that "the public has a presumptive right to access discovery materials that are filed with the court, *used in a judicial proceeding*, or otherwise

11

constitute 'judicial records,'" and noting that even discovery documents "used in a court proceeding" which "consequently . . . could influence or underpin [a] judicial decision" should be "presumptively open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-term confidentiality" (emphasis added) (citations and internal quotation marks omitted)); *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) ("[A] document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal."); *cf. FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (explaining that "[t]he overwhelming majority of documents disclosed during discovery are likely irrelevant to the underlying issues and will not be 'heard or read by counsel' or 'by the court or other judicial officer,'" but public access is presumed for "materials that invoke 'judicial resolution of the merits'" (citations omitted)).

This appeal arose under a unique set of circumstances, and thus we keep our holding narrow in comporting with our own precedent. Alabama's lethal injection protocol may not have been formally filed under the rushed timeline of Hamm's approaching execution, but the protocol constitutes a judicial record subject to the common law right of access because it was submitted to the district court to resolve disputed substantive motions in the litigation, was discussed and analyzed by all parties in evidentiary hearings and arguments, and was unambiguously

12

integral to the court's resolution of the substantive motions in Hamm's as-applied challenge to the protocol.[6]

## B. Common Law Right of Access

After establishing that Alabama's protocol is a judicial record, we must now determine whether the district court abused its discretion in unsealing the protocol after finding it subject to the common law right of access. Generally, "the common-law right of access standard as it applies to particular documents requires the court to balance competing interests of the parties," *Chicago Tribune*, 263 F.3d at 1312, in light of "the relevant facts and circumstances of the particular case," *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013). Where a party seeks to protect material under Rule 26 of the Federal Rules of Civil Procedure, and the material is then admitted in connection with a substantive motion, "confidentiality imposed by Rule 26 is [not] automatically forgone"; rather, courts still conduct a balancing test to compare the respective interests of the parties. *Chicago Tribune*, 263 F.3d at 1313.

"The common law right of access may be overcome by a showing of good cause, which requires balanc[ing] the asserted right of access against the other

---

[6] The parties discussed the protocol with the district court in an *in camera* hearing, and the district court noted that substantive motions in this case incorporated and referred to the protocol. The court relied upon—and cited to—the protocol in denying Alabama's motion for summary judgment "as to the merits of Mr. Hamm's as-applied claim"; the court also relied upon the protocol in denying Hamm's request for a preliminary injunction.

13

party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (internal quotation marks omitted). Courts determine whether good cause exists by looking to the nature and character of the information in question. *See id.* When evaluating good cause, a court should consider relevant factors including "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records."[7] *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). A court should also consider the consistency of a party's reliance where the party files a document subject to a protective order. *AbbVie Prods., LLC*, 713 F.3d at 68.

To determine whether the district court abused its discretion in granting public access to Alabama's protocol, we look to its analysis of these factors. The district court considered the nature and character of the information in the lethal injection protocol, finding that the protocol and its related records "clearly concern a matter of great public concern, *i.e.*, how Alabama carries out its executions."

---

[7] In *Nixon v. Warner Communications, Inc.*, the Supreme Court described examples of "public scandal" as "publication of the painful and sometimes disgusting details of a divorce case," or "reservoirs of libelous statements for press consumption." 435 U.S. 589, 598, 98 S. Ct. 1306, 1312 (1978).

14

The court noted that "[c]apital punishment is a hotly contested issue that involves an irrevocable punishment for prisoners convicted of terrible crimes. The public has a great interest in understanding how the State carries out its punishment."

The district court rejected Alabama's argument that the Intervenors sought the protocol for an improper purpose, concluding that "public *discussion* is not the same as public *scandal*. . . . And the fact that the Intervenors may take a position about the death penalty does not make their intent to publish factual matter about how Alabama conducts its executions 'scandalous.'" The court also considered whether access to the protocol would likely promote understanding of a historically significant event. The court found that this factor weighed in favor of unsealing the documents because "access to the lethal injection protocol may help the public to understand the context of the State's efforts to execute [Hamm]. It may also help the public to understand how the same scenario might be repeated or avoided under the protocol as it currently stands."

The district court went on to say that the press already had access to some information about the protocol because the court had referred "in broad terms [to] aspects of the protocol in its memorandum opinion about Defendants' motion for summary judgment." Alabama argues that the press will not gain any new significant information from the protocol because the only portion of the protocol at issue in Hamm's case—the procedure for venous access—has already been

15

discussed by the district court and Hamm's counsel, and is therefore accessible to the public. The court concluded, however, that currently available information about the protocol was not an adequate replacement for the actual protocol. The court explained that, "in an attempt to avoid sealing or redacting the memorandum opinion, the court kept its summary of the protocol deliberately vague, highlighting what the protocol does *not* contain instead of what it *does* provide." Furthermore, "[Alabama] will keep the lethal injection protocol secret from the public unless the court unseals it. And the court's vague summary of portions of the lethal injection protocol and its gaps cannot truly substitute for the document itself."

The district court also evaluated whether Alabama relied on the protective order issued to keep the protocol confidential. The court acknowledged that Alabama has always sought to keep the protocol confidential, but ultimately decided that "the fact that [Alabama] zealously guard[s] information about a matter of great public concern does not tip the scales against disclosure. The court concludes that the considerations in favor of unsealing the records greatly outweigh [Alabama's] interest in maintaining secrecy." Finally, the court considered Alabama's contention that its lethal injection protocol contains sensitive security information. The court recognized that certain parts of the lethal

16

injection protocol should remain sealed due to these potentially valid concerns and noted that these parts of the protocol could be easily redacted.[8]

After considering and weighing all these factors, the district court held that "the public's common law right of access mandates the release of the lethal injection protocol and related court records." The court added, however, that it would not unseal the protocol in full—rather, "[a]ny information that could be used to track the locations of personnel before, during, and after the execution, or that could be used to identify the people involved in the execution, will be redacted." The court then resolved to consult with Alabama to determine which parts of the protocol needed to be redacted. The district court's thorough analysis of the factors listed in our precedent, and its tailored conclusion—allowing for redaction of information that implicated Alabama's proffered security concerns—did not constitute an abuse of discretion.

### III. Intervention

We review the grant of a motion for permissive intervention for abuse of discretion, and the grant of a motion to intervene as of right de novo. *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). We review

---

[8] Alabama has not provided any other concrete security concerns, either in the district court or on appeal, beyond concern for protecting the identities of individual participants in the execution process. Redaction of identifying information in the protocol will eliminate this concern. At the time of oral argument, Alabama still had not taken the district court's offer to redact the protocol.

17

subsidiary factual findings for clear error. *Id*. We review a court's determination of timeliness for intervention for abuse of discretion. *Walters v. Atlanta*, 803 F.2d 1135, 1151 n.16 (11th Cir. 1986).

"The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *In re Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986). Under Rule 24(a) of the Federal Rules Civil Procedure, a court must allow timely intervention by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24(b) allows courts to permit timely intervention by anyone with "a claim or defense that shares with the main action a common question of law or fact," *id*. at 24(b)(1)(B), but courts must exercise discretion and consider whether the intervention will "unduly delay or prejudice the adjudication of the original parties' rights," *id*. at 24(b)(3).

The district court granted intervention under Rule 24(a) for the Intervenors here, but the court also recognized that intervention would be proper under Rule 24(b). Intervention under either Rule 24(a) or 24(b) must be timely filed. Intervention may be timely filed even if it occurs after a case has concluded;

18

timeliness depends on the circumstances of each case. *Cf. Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (finding intervention timely even though the contested order was entered 33 years earlier); *Chicago Tribune*, 263 F.3d at 1308 (noting timely intervention by members of the media "in the months following settlement" of the original case).

Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness. *Salvors*, 861 F.3d at 1294. Mere knowledge that an action is pending, without appreciation of the potential adverse effect an adjudication of that action may have on one's interests, does not preclude intervention. *Walters v. City of Atlanta*, 803 F.2d 1135, 1151 n.16 (11th Cir. 1986). "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. In fact, this may well be the only significant consideration when the proposed

19

intervenor seeks intervention of right." *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) (citations omitted).[9]

Alabama argues that the Intervenors did not make a timely motion to intervene because the Intervenors knew that they had an interest in Hamm's case as early as January 18, when a reporter associated with Alabama Media Group reported on the case filings. Alabama did not submit a proposed confidentiality order until January 30, and did not produce the protocol until the hearing on January 31, which is when the district court imputed an interest to the Intervenors. The Intervenors did not seek to intervene until March 28. Using the district court's chosen date, we still find that this factor cuts slightly against timeliness of intervention.

Alabama also argues that it was prejudiced by the Intervenors' untimely intervention for two reasons. First, had Alabama known that the press would seek

---

[9] Though the former Fifth Circuit recognized in *McDonald* that "intervention after judgment is unusual and not often granted," it also noted that "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenors; delay in moving to intervene." 430 F.2d at 1073 (citations omitted). *McDonald* binds us. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all Fifth Circuit decisions handed down prior to close of business on September 30, 1981, are binding precedent in the Eleventh Circuit). Moreover, other circuits have recognized that timeliness concerns may be less significant when intervention is "not on the merits, but for the sole purpose of challenging a protective order." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (allowing intervention three years after a case was settled); *see also Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353–54 (9th Cir. 2013); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994) ("[T]he growing consensus among the courts of appeals [is] that intervention to challenge confidentiality orders may take place long after a case has been terminated.")

access to the protocol, it would not have voluntarily turned over the protocol during the case, and would have challenged any court decision requiring disclosure. Second, if the press had intervened earlier, Alabama could have taken a different approach to the joint dismissal of the case and the finalized settlement agreement with Hamm.[10] The district court rejected these arguments, finding first that if Alabama did not voluntarily produce the protocol, the court would have ordered Alabama to do so—thus, Alabama ultimately would have had to turn over the protocol. The court then found that Alabama and Hamm could not have reached any agreement about unsealing records in their settlement because neither party sought to unseal the records.[11]

Alabama argues that the Intervenors will not suffer prejudice if they cannot intervene in Hamm's case because the Intervenors will not lose the opportunity to access the protocol in other ongoing or future lethal injection cases. This argument is unpersuasive. The mere fact that members of the press could attempt—in future or ongoing cases—to intervene and seek access to Alabama's execution protocol does not mean that the Intervenors are not prejudiced in this case. The Intervenors claim that they have a common law right to access the lethal injection protocol

---

[10] Alabama did not provide any details about how it might have changed its settlement agreement with Hamm had members of the press sought to intervene before settlement.

[11] We also note that Alabama and Hamm could not have bound third parties or the court as to sealing issues.

21

included as a judicial record in Hamm's case.  Denial of this right constitutes an injury even if the press might have another opportunity to obtain a copy of Alabama's protocol in a different case.  Even if a copy of the protocol were available in the future, Intervenors may be prejudiced by delay in gaining access to that record.  *Cf. Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329, 96 S. Ct. 251, 254 (1975) (in analyzing a prior restraint in the First Amendment context, holding that "each passing day" may constitute a separate and cognizable harm where "a direct prior restraint is imposed upon the reporting of news by the media").  Moreover, there is no way to ensure that other copies of this same protocol—as applied in Hamm's case—will be available in future cases.  Alabama could change its protocol at any time, which would render the protocol used in Hamm's case unnecessary for future death penalty litigation.  In addition, challenges to the protocol are sometimes barred by the statute of limitations, and there is no evidence that Alabama regularly files this protocol in litigation.

Finally, no unusual circumstances appear to militate for or against the Intervenors' intervention in Hamm's case.  In considering the totality of the circumstances and evaluating the alleged prejudice to each party, the district court reasonably concluded that the Intervenors timely intervened in Hamm's case.  The district court's conclusion did not constitute an abuse of discretion.  This

22

determination of timeliness was necessary to meet the requirements for intervention under either Rule 24(a) or Rule 24(b).

Alabama also challenges the intervention based on other requirements of Rule 24. Alabama first argues that intervention under Rule 24(a) was improper because the Intervenors are not "so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest." Alabama claims that the Intervenors' asserted interest in accessing the protocol—informing the public as to whether the failure to execute Hamm was due to a problem with the protocol—is not impaired by the disposition of Hamm's case. Alabama presumes that the Intervenors may have other opportunities to access the protocol, regardless of what happens in this case. We previously addressed this argument above in evaluating timeliness, and we reject it for the same reasons here. Thus, we conclude that intervention as of right was appropriate under Rule 24(a).[12]

---

[12] Moreover, it would not have been an abuse of discretion for the district court to grant intervention under Rule 24(b). Many circuits recognize that parties "seeking to intervene in a case for the limited purpose of unsealing judicial records" need not show a "strong nexus of fact or law" to the issues in the original case. *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992)); *see also Jessup v. Luther*, 227 F.3d 993, 997–99 (7th Cir. 2000) ("[A]lthough there is ample justification for the common fact or law requirement when the proposed intervenors seek to become a party to the action, [t]here is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." (internal quotation marks omitted)); *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) ("[C]ourts have been willing to adopt generous interpretations of Rule 24(b) because of the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings.'" (quoting *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)));

23

## V. Conclusion

Our own precedent in *Newman* compels us to find that Alabama's lethal injection protocol—submitted to the court in connection with a litigated dispute, discussed in proceedings and motions by all parties, and relied upon by the court to dispose of substantive motions—is a judicial record. Judicial records provide grounds upon which a court relies in deciding cases, and thus the public has a valid interest in accessing these records to ensure the continued integrity and transparency of our governmental and judicial offices. This public right of access, based in the common law, may only be overcome when a court determines—after balancing the respective competing interests of all parties—that the party seeking to keep the information confidential has shown good cause. Here, the district court did not abuse its discretion. The court properly balanced the interests of Alabama and the Intervenors, concluding that Alabama had not shown good cause sufficient to overcome the common law right of access. The court also properly granted

---

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir. 1994) ("By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action."). The Intervenors here seek to determine whether the district court's protective order preventing disclosure of the protocol was justified. They want to access the protocol in order to analyze what role, if any, the protocol played in Alabama's failed execution of Hamm. The district court did not abuse its discretion in deciding that the Intervenors' asserted interests for intervening—for the limited purpose of unsealing judicial records—provided an adequate nexus for intervention under Rule 24(b).

intervention under Rule 24 for Intervenors seeking to assert their common law right of access to the lethal injection protocol.  Accordingly, we affirm.

**AFFIRMED**.