[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13932

_____

RANDALL CALLAHAN,
KATRYNA GRISSON,
CANDICE SEAMAN,
MICHAEL WINGATE,
EMORY UNIVERSITY,
d.b.a. Emory University Hospital,
HENRY FORD HEALTH SYSTEM,
INDIANA UNIVERSITY HEALTH,
OREGON HEALTH & SCIENCE UNIVERSITY,
PIEDMONT HEALTHCARE,
THE RECTOR AND VISITORS OF THE UNIVERSITY OF
VIRGINIA,
on behalf of its Medical Center,
THE REGENTS OF THE UNIVERSITY OF MICHIGAN,
on behalf of its academic medical center, Michigan Medicine,

2                Opinion of the Court                20-13932

SAINT LUKE'S HOSPITAL OF KANSAS CITY,
UNIVERSITY OF IOWA,
UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,
a body politic and corporate and an independent
instrumentality of the State of Kansas,
UNIVERSITY OF KENTUCKY,
VANDERBILT UNIVERSITY MEDICAL CENTER,
VIRGINIA COMMONWEALTH UNIVERSITY HEALTH
SYSTEM AUTHORITY,
THE WASHINGTON UNIVERSITY,
BARNES-JEWISH HOSPITAL, et al.,

Plaintiffs-Appellees,

versus

UNITED NETWORK FOR ORGAN SHARING,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-01783-AT

————————————

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

GRANT, Circuit Judge:

Judicial records are open to the public, and for good reason—access to judicial proceedings is crucial to our tradition and history, as well as to continued public confidence in our system of justice. This Circuit has been resolute in our enforcement of that presumption of public access.

The appellants here, preferring to avoid the release of embarrassing internal communications that were attached to briefing in the district court, seek to persuade us that we should weaken our rule. They urge us to evaluate the functional purpose of the documents at issue rather than their categorical status as judicial records. Our precedents, however, permit no such shift. The documents here are plainly judicial records and the appellants have not shown good cause to keep them sealed. We affirm.

## I.

Organ donation saves lives—but whose? To ensure a uniform national policy answering this question, Congress enacted the National Organ Transplant Act, which authorizes a partnership between the federal government and private professionals involved in organ donation. 42 U.S.C. §§ 273–274g. For the past thirty-five years, the United Network for Organ Sharing has overseen that partnership through a contract with the United States Department of Health and Human Services. In this unique role, UNOS works with the organ transplant community to

generate policies that will equitably allocate organs among potential recipients.

About three years ago, UNOS developed and approved a new liver allocation policy that changed the geographic parameters guiding which patients received donated organs. UNOS says the policy is intended to provide more liver transplants to the patients in greatest need, even if they are farther away from donors. Its opponents say the policy will result in fewer transplants, especially in socioeconomically disadvantaged areas.

No matter which side has the better of the argument, every rule change has winners and losers. And the new organ transplant policy meant a shift in who would receive donated organs—ultimately, a change in which patients would live and which patients would die. Hospitals and patients who were on the losing end of that equation did not accept it quietly. A few months after the new liver policy was approved, they sued UNOS and HHS, alleging violations of the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment. The hospitals also sought preliminary injunctive relief, which the district court denied based on its review of one of the APA claims. On interlocutory appeal, this Court affirmed that denial. *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1257, 1266 (11th Cir. 2019). We then remanded the case for the district court to consider the remaining claims. *Id.* at 1266.

The district court ordered limited discovery on remand, but UNOS repeatedly failed to live up to its production obligations. Indeed, it took two specific and successive orders from the court

before UNOS produced requested communications between its top-level personnel and outside policymakers. These documents included, among other things, several unguarded emails expressing personal opinions about the relative merits of living in different regions of the United States.

After the documents were finally produced, the district court allowed the hospitals to file a ten-page follow-up brief in support of their request for a preliminary injunction. The hospitals argued that the new documents exposed "bad faith and improper behavior" in UNOS's policymaking process and should be considered as proof that the policy change was arbitrary, capricious, and the result of a denial of due process. Pending its own review, the court put both the supplemental briefing and attached documents under provisional seal, restricting them to "parties and Court users only."

The district court ultimately excluded the documents from the administrative record for the APA claim against HHS because it concluded that even if the documents showed bad faith on the part of UNOS, they did not do so for HHS. *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 434 F. Supp. 3d 1319, 1356 (N.D. Ga. 2020). The court went on to deny the preliminary injunction, but emphasized that the documents were "still part of [the] Court's record" and could potentially inform judicial inquiry into the remaining issues in the case. *Id.* at 1356, 1373. The court also noted that the documents included "colorable evidence of animosity and even some measure of regional bias"—what it characterized in a

later order as "inadvisable 'hot takes,'" "inflammatory remarks," and "clear preferences for policy outcomes." *Id.* at 1363.

Following the district court's ruling, the hospitals moved to unseal the supplemental briefs with the appended documents. The district court granted the motion, concluding that the documents were judicial records and that UNOS had not shown good cause to seal them. UNOS now appeals.

## II.

"Whether a document is a 'judicial record' subject to the common law right of access is a question of law we review de novo." *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1165 (11th Cir. 2019). But we review a district court's decision about whether to unseal documents for abuse of discretion. *Id.* A district court abuses its discretion when it "applies an incorrect legal standard," "follows improper procedures in making the determination," "makes findings of fact that are clearly erroneous," or "commits a clear error of judgment." *United States v. Harris*, 989 F.3d 908, 911–12 (11th Cir. 2021) (quotation omitted).

## III.

We first need to consider whether we have jurisdiction; we cannot reach the merits of UNOS's interlocutory appeal if not. *Hall v. Flournoy*, 975 F.3d 1269, 1274 (11th Cir. 2020). Circuit courts generally have appellate jurisdiction to review only "final decisions of the district courts"—that is, decisions that resolve all litigation on the merits and leave "nothing for the court to do but execute

the judgment." 28 U.S.C. § 1291; *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (quotation omitted). This limitation preserves the independence and authority of the district courts, reduces vexatious litigation, and promotes judicial efficiency. *See Firestone Tire*, 449 U.S. at 374.

But the rule is not ironclad. Under the collateral order doctrine, we may review decisions of issues apart from—"collateral to"—the merits of a case when effective review would be impossible after a final decision on the merits. *Hall*, 975 F.3d at 1274. For the collateral order doctrine to apply, a decision must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). We have previously held that orders granting motions to seal and orders denying motions to unseal pass this test and are thus "appealable as collateral to the underlying action." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1242 (11th Cir. 2007). But the order on appeal here is different. It is an order granting a motion to unseal, and we have never ruled on whether that kind of decision is reviewable as a collateral order.

We hold that it is. Like an order granting a motion to seal or denying a motion to unseal, an order granting a motion to unseal conclusively decides a disputed question and resolves an important issue separate from a lawsuit's merits. And it becomes effectively unreviewable if interlocutory appeal is unavailable—

even more so than an order granting a motion to seal or denying a motion to unseal. The tools of the information age have only made more apparent what has always been true—once information is revealed, it cannot be made secret again. *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1246 (11th Cir. 2020). Requiring UNOS to wait for a final judgment to appeal this order would allow the documents to enter public circulation, effectively rendering this appeal moot.

We acknowledge that the collateral order doctrine is an exception that "must never be allowed to swallow the general rule." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quotation omitted). But like several of our sister circuits, we recognize that due to the irreversible nature of public access to sensitive documents, that exception is warranted for orders to unseal. *See, e.g.*, *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448–50 (5th Cir. 2019); *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 133–34 (2d Cir. 2017). *But see United States v. Guerrero*, 693 F.3d 990, 995–99 (9th Cir. 2012) (holding that orders resolving motions to seal pretrial competency proceedings are not immediately appealable). We thus have jurisdiction to consider this appeal.

## IV.

We now turn to the merits. UNOS argues that the district court twice erred: first when it concluded that the controversial documents are judicial records because they are attached to the hospitals' supplemental briefing, and second when it ordered the

documents unsealed in spite of UNOS's contention that the hospitals acted in bad faith. We are unpersuaded. The first argument flies in the face of our precedents, and the second contests a reasonable exercise of the district court's discretion.

### A.

The common-law right of access to judicial proceedings is "an essential component of our system of justice" and "instrumental in securing the integrity of the process." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). We are mindful that "the means used to achieve justice must have the support derived from public acceptance of both the process and its results." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980). But while the right of access is indispensable, it is also limited. The right attaches only to "items which may properly be considered public or judicial records"—not to any and all materials produced during discovery—and it can be outweighed by competing interests. *Chi. Trib. Co.*, 263 F.3d at 1311.

Though the distinction between judicial records and discovery materials may seem ambiguous in concept, our precedent dispels any mysteries about where that line falls. This Circuit has held that "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Id.* at 1312. In other words, though discovery materials do

not automatically qualify as judicial records subject to the common-law right of access, they take on that status once they are filed in connection with a substantive motion.

We have faithfully adhered to this rule—without exception. For instance, in *Romero v. Drummond Co., Inc.*, we reiterated that material "filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." 480 F.3d at 1245. We also clarified that a substantive pretrial motion need not be dispositive for the rule to apply; any motion "presented to the court to invoke its powers or affect its decisions" is subject to the public right of access. *Id.* at 1246 (quotation omitted). And in *Federal Trade Commission v. AbbVie Products LLC*, we held that a complaint and its attachments were judicial records, emphasizing that we "determine whether a document is a judicial record depending on the type of filing it accompanied." 713 F.3d 54, 64 (11th Cir. 2013).

So too in *Commissioner, Alabama Department of Corrections v. Advance Local Media, LLC*. There, we held that even documents *not* formally filed with the court could be considered judicial records if they were "integral to the judicial resolution of the merits in any action taken by that court." 918 F.3d at 1167 (quotations omitted). And we still cited the *Chicago Tribune* test as the proper standard for those documents that had been filed. *Id.* at 1166–67. Indeed, we emphasized that our "narrow" holding "comport[ed] with our own precedent," applying only to the "unique set of circumstances" in which an unfiled document could properly be considered a judicial record.

*Id.* at 1168.  *Advance Local Media* shows that while filing a document with a pretrial motion is sufficient to make it a judicial record, that rule establishes a floor rather than a ceiling.

Remarkably, UNOS argues that the *Chicago Tribune* test no longer applies because of our holding in *Advance Local Media*.  It contends that our focus there on the role a given document played in the district court's decisionmaking nudges us inexorably toward a "functional approach," and away from the categorical approach we've applied so far.  According to UNOS, the law in this circuit is now that the status of a document as a judicial record "depends on the document's relationship to the court's decision on a disputed issue."[1]

That argument distorts our case law beyond recognition.  We have consistently rejected any test that would make a document's status as a judicial record dependent upon "whether it played a discernible role in the resolution of the case" or that would

---

[1] A "cleaned up" parenthetical has limited utility at most.  And whatever utility that innovation may have will vanish entirely if it is used to obscure relevant information.  Here, UNOS quoted *Advance Local Media* as saying that "[u]nlike 'materials that invoke judicial resolution of the merits,' the public interest is not furthered by documents that are 'irrelevant to the underlying issues,' like 'the overwhelming majority of documents disclosed during discovery.'"  But the text UNOS "cleaned up" comes from an explanatory "cf." parenthetical summarizing *AbbVie Products* and therefore does not constitute a holding in *Advance Local Media* itself.  *See Advance Loc. Media*, 918 F.3d at 1168.  Even more troubling, UNOS omitted the end of the sentence it quoted, which reiterated that "public access is presumed for materials that invoke judicial resolution of the merits."  *Id.* (quotations omitted).

require us to determine "the actual role the document played." *AbbVie Prods.*, 713 F.3d at 64. And *Advance Local Media* did not cut back on the common-law right of access for documents that qualify under the *Chicago Tribune* test; consistent with our "tradition favoring access," it *expanded* the definition of judicial records to include a narrow class of documents not formally filed with the court. *Id.* at 1168 (quoting *Chi. Trib. Co.*, 263 F.3d at 1312). The case entrenches rather than erodes our commitment to the principle that public access is presumed for documents "filed with pretrial motions that require judicial resolution of the merits of an action." *Id.* at 1167 (quotation omitted). What matters is how the document was used by the parties—to support an argument before the court—and not whether the court itself used the document to resolve that argument.

We decline UNOS's invitation to part ways with these precedents. Under the standard we have consistently applied, the outcome here is clear: as the district court correctly concluded, the documents at issue "were used in connection with merits briefing such that the public right of access attaches." They were attached to the hospitals' supplemental brief in support of a preliminary injunction—a pretrial motion separate from discovery. The materials thus qualify as judicial records, and they are subject to the common-law right of access.

## B.

Still, determining that a document is a judicial record is not the end of the inquiry. It is true—such records are presumptively

available to the public under the common law so that the judicial process can remain accessible and accountable to the citizens it serves. But even when the right of public access attaches, it is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Courts must evaluate whether good cause exists to prevent such access, balancing "the asserted right of access against the other party's interest in keeping the information confidential." *Romero*, 480 F.3d at 1246 (quotation omitted).

Though we have not articulated a set list of factors, a court weighing these competing interests will consider a number of important questions, including "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id.* Concerns about trade secrets or other proprietary information, for example, can overcome the public interest in access to judicial documents. *Id.* Indeed, a court should consider "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage." *Advance Loc. Media*, 918 F.3d at 1169 (quotation omitted). Because district courts are "in a superior position to decide whether to enter or modify protective orders," the decision whether to unseal documents is one best left to their "sound discretion." *AbbVie Prods.*, 713 F.3d at 61.

14                    Opinion of the Court                    20-13932

UNOS argues that it has successfully shown good cause to keep the documents sealed.[2] It says that the district court abused its discretion by failing to correctly weigh the relevant factors. But simply assigning UNOS's favored factors less weight in the final balance is not an abuse of discretion. UNOS offered no particularly compelling reasons to keep the documents sealed in the first place. They involve policymaking on a topic of genuine public concern, and do not contain proprietary information or trade secrets that require protection. Nor is there any suggestion that the emails are fraudulent; UNOS itself produced the communications. To be sure, UNOS's eagerness to keep the documents secret is understandable; we are certain that these are not the first litigants to wish they had been more circumspect in their emails. But UNOS's reasoning boils down to a desire to keep indiscreet communications out of the public eye, which is not enough to satisfy our standard for good cause.

In any event, the district court explicitly considered—and rejected—UNOS's arguments against unsealing. The court first

---

[2] A party seeking to seal documents must generally first show good cause. *See* Fed. R. Civ. P. 26(c)(1). After this initial showing, the party seeking unsealing bears the burden of showing that good cause no longer exists. *AbbVie Prods.*, 713 F.3d at 66. Here, the district court ordered that the documents initially be "restricted to parties and Court users only, pending its review." Because the district court did not require an initial showing of good cause before sealing the documents, both parties now assume that UNOS bears the burden of showing good cause to keep them under seal. We also assume that UNOS bears the burden of showing good cause under these circumstances.

considered the potential irrelevance of the documents.    That included the contention that the hospitals had not truly relied on the documents in their briefing and the district court's ultimate decision to exclude the documents from the administrative record (though not from the complete record of the case).  Noting that the hospitals had to "be selective" in the sources they could quote in their short supplemental brief, the court concluded that the hospitals had indeed relied on the documents and that they could not be excluded for irrelevance.  It next rejected as insufficient the argument that unsealing the documents might have an adverse effect on policymaking, explaining that UNOS's "generalized notion" that unsealing the documents would chill deliberations "cannot overcome the presumptive public interest nature of these documents."  Finally, the court considered the possibility that the hospitals had sought the documents from UNOS in a bad-faith attempt to publicize sensational communications.  It found no evidence of bad faith, but noted that even if the hospitals had acted out of spite, "sealing materials subject to the common law right of access is generally not a proper sanction for misconduct."

UNOS argues that the district court ignored one crucial factor in its analysis: the possibility that even if the hospitals had initially sought the documents in good faith, that good faith had dissipated once they seized the opportunity to embarrass their opponents by unsealing the communications.  The hospitals' "true purpose in moving to unseal," UNOS says, was "to publicize private emails they should never have received" in "a misuse of the discovery process."  But this argument is really just a retread of the

bad-faith argument that the district court already rejected. Though UNOS raises new doubts about the hospitals' motives in its brief, including that they hope to exploit the documents in other litigation, those doubts are not concrete enough to justify overturning the reasoned judgment of the district court.

UNOS also warns that affirming the district court's order to unseal will allow "the court to be used as a vehicle for publicizing confidential materials," opening the floodgates to plaintiffs seeking to use filings as "Trojan horses for irrelevant material." Fortunately, our precedents already protect litigants against such schemes: "insofar as this potential for abuse does exist in other cases, there are already sufficient remedies to address it." *AbbVie Prods.*, 713 F.3d at 64. If confidential or sensitive documents are improperly attached to filings, an aggrieved party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" from the record. Fed. R. Civ. P. 12(f). For cases involving clear abuse of the judicial system, "professional sanctions may be available, along with monetary sanctions" under Federal Rule of Civil Procedure 11, or parties may bring an "action for wrongful civil proceedings." *AbbVie Prods.*, 713 F.3d at 64 (quotation and brackets omitted).

We are unpersuaded by UNOS's argument that these remedies do not go far enough—particularly because UNOS did not even seek to obtain them. UNOS explained during oral argument that it considered a motion to strike "futile," and decided not to file one because of the pressures of the hectic holiday season. But just because UNOS failed to pursue the remedy does not make

it deficient.  Sealing documents is no more effective than striking them; motions to strike offer ample protection against the abusive litigation tactics that UNOS decries.

We see no abuse of discretion in the district court's analysis. To the contrary, we share the district court's reluctance to endorse document sealing as punishment for bad behavior.  We have already rejected the reasoning that allowing the public to access documents will "vindicate improper motives" on the part of litigants.  *Romero*, 480 F.3d at 1247.  The interests served by judicial openness extend far beyond the bounds of any particular case.  As we have long recognized, when "a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).  So too here.  The district court did not err.

⋆    ⋆    ⋆

The documents under seal in this case are judicial records subject to a presumption of public access, and the district court did not abuse its discretion in ordering them unsealed.  We therefore **AFFIRM** the district court's order.